In response to this Court's opinion and order of June 16, 1989, both parties have filed briefs on the issues of the timeliness of Harris's request for a transcript of the coram nobis proceedings and the proper remedy should this Court find that the request was timely.
 I
The significant facts are set out below in chronological order. Those facts reveal a complex labyrinth of procedural chaos and confusion.
February 18, 1975: Harris was convicted of first degree murder and sentenced to death for his participation in a 1974 prison uprising in which one prison guard was killed. This conviction was affirmed on appeal. Harris v. State,352 So.2d 460 (Ala.Cr.App. 1976), affirmed, Ex parte Harris,352 So.2d 479 (Ala. 1977).
Date not disclosed: Harris filed a petition for writ of error coram nobis.
June 1978: As part of the coram nobis proceedings, evidentiary hearings were held in which Harris presented evidence concerning his allegation that the grand jury which returned the indictment against him had been selected in an unconstitutional manner based upon the exclusion of blacks and women.
July 1, 1981: After apparently at least two amended petitions were filed and an undisclosed number of hearings had been held, the circuit court granted a portion of the coram nobis petition, set aside the conviction, and granted a new trial based on the State's failure to disclose impeaching information. The court denied Harris's claim that the grand jury had been unconstitutionally selected, and, in that regard found:
 "(5) As to sub-paragraph 5(e) of the petition as amended: That the allegation of said sub-paragraph that 'The conviction of Johnny Harris was based on an indictment returned by a grand jury that was unconstitutionally selected and empaneled' is not sustained by the evidence; that the allegation of said sub-paragraph of the petition as amended that Petitioner showed 'by motion and affidavits filed prior to arraignment that the jury selection system of Escambia County systematically excluded Blacks and women from jury service' is not sustained by the evidence; that the allegation of said subparagraph that 'Petitioner was denied an evidentiary hearing on the question of *Page 868 
discrimination in the jury selection system, and his motion was denied "as a matter of law"' is not sustained by the evidence. The Court further finds and is of the opinion that there may have been some misunderstanding between the trial judge who ruled on said motion 'filed prior to arraignment' and Petitioner, or Petitioner's counsel at that time, but that Petitioner, or his counsel at that time, had ample opportunity to clarify the question whether there was any misunderstanding, and to have corrected any injury to Petitioner by any alleged denial by the trial judge of an evidentiary hearing on the question of discrimination by Escambia County officials against blacks and women in the process of supplying names for jury service, and that defendant did not avail himself of such opportunity either in the trial court or on appeal of his conviction. The Court further finds and is of the opinion that appellant knowingly and effectively abandoned his motion based on his contention that the indictment was returned by a grand jury that was unconstitutionally selected and empaneled, or whose names and identity were obtained from the jury roll obtained by a system that 'systematically excluded blacks and women from jury service.' The Court further finds that the Jury Commission of Escambia County, including the commissioners and the clerk, in any alleged failure to comply fully with the law, did not intentionally or purposefully discriminate against either blacks or women in compiling a jury roll and that there was nothing about any system for the composition of the jury roll that was designed or calculated to exclude blacks and women from jury service by reason of their color or sex.
 "In said sub-paragraph 5(e) of the petition as amended, there may be some blending of a complaint of the method by which the particular grand jury that indicted appellant was obtained with complaint as to the method or system by which the jury roll (from which the grand jury was obtained) was compiled, but the Court is of the opinion and finds that neither in the obtaining or drawing of the grand jury, nor in the composition or compilation of the jury roll of Escambia County, was there any violation of any constitutional rights of the Petitioner, particularly any rights asserted in the petition as amended."
August 3, 1981: The Alabama Attorney General filed notice of appeal from the granting of the coram nobis petition. The Attorney General requested a transcript of "those portions dealing with the Second Amended Petition for Writ of Error Coram Nobis and for Motion for Relief From Judgment, to wit: the hearings which took place on December 17 through December 20, 1979." See State v. Harris, 1 Div. 315, August 12, 1981. This appeal was dismissed on the ground that the State has no authority to appeal from the granting of a petition for writ of error coram nobis. On August 13, 1981, Harris filed a cross-appeal "from the judgment entered herein on July 1, 1981, insofar as said judgment denied the relief requested by the petitioner in paragraphs 5(a) through 5(q) and paragraph 5(v) of the Second Amended Petition." The record in this court contains no request for a transcript. See State v. Harris, 1 Div. 315. In his brief, Harris alleges that this cross-appeal was to "preserve his claims." Brief of Johnny Harris in Response to the Order of the Court of June 14, 1989, at p. 3. On August 18, 1981, defense counsel Hicks informed the circuit clerk that "Harris will not pursue an appeal from the July 1, 1981, judgment of Judge Clark in light of the dismissal of the State's appeal. Therefore, you need not proceed at this time with the processing of Mr. Harris's previously filed appeal." Harris's cross-appeal was dismissed by the Court of Criminal Appeals on August 19, 1981. The records of this Court show that Harris was represented by W. Clinton Brown of Decatur, Alabama; H. Diana Hicks of Boston, Massachusetts; and William H. Allison of Louisville, Kentucky.
December 28, 1981: The circuit court set Harris's arraignment for February 12, 1982, and his trial for March 15, 1982.
February 12, 1982: Harris filed a motion requesting a transcript of the coram nobis *Page 869 
hearing. The motion alleged, "The defendant needs the transcript to adequately prepare for his upcoming retrial as well as for possible impeachment purposes at his trial."
May 26, 1982: Harris filed a "plea in abatement" to quash the indictment alleging that the grand jury that indicted him was "illegally and unconstitutionally constituted in that women and Blacks were systematically excluded from the jury box (jury roll) from which the grand jury was selected." The circuit court treated this plea as a motion to quash.
January 13, 1983: Harris filed a "renewed and amended motion to quash the indictment." In that motion he specifically referred to "testimony presented at Defendant's evidentiary hearing in support of his Petition for Writ of Error Coram Nobis." Attached to the motion was the affidavit of Attorney Brown, dated January 5, 1983, as to the evidence presented at the coram nobis hearing. At this time, Harris is represented by attorneys Paul Soreff, William B. Allison, and Ronnie Williams.
On January 13, Harris also filed a "motion to admit or to require the state to stipulate to admission of all testimony, physical evidence and documents received at Harris's coram nobis hearing relating to alleged unconstitutionality of grand jury selection procedures."
May 27, 1983: At a "motions hearing," it appears that there existed some conflict over whether or not defense counsel had ever ordered a transcript of the coram nobis proceedings. The circuit court overruled Harris's motion to quash the indictment and denied his request that the testimony presented at the coram nobis hearing be "entered into the record." When defense counsel requested that the judge "at least take judicial notice of the previous evidence and the record that the Court had heard in the coram nobis hearing," the circuit court responded, "I'm overruling everything you've presented in that respect."
In the course of the hearing, the circuit judge, upon request by one of Harris's attorneys, stated his reasons for denying the request for a transcript of the coram nobis hearings:
 "Because you haven't shown a good reason for it, as I see it. I don't mind stating it. But all sorts of things come into it. Somebody said it was ordered, somebody said, by the Defendant's counsel. As I understand it, a letter has come in to the effect he didn't order it. Is that correct?
 "MR. SOREFF (defense counsel): Correct, Your Honor.
 "THE COURT: And I'm just not — that is one of the reasons for it. And also you haven't shown, as I see it, that to which he is [sic]."
We note that at a hearing held on August 12, 1986, defense counsel stated to the circuit court that the judge had first ordered that the 1978 coram nobis hearing be made a part of the record for the appeal "in the January 1983 hearings, the pretrial hearings." The record before this court does indicate that pretrial hearings were held on January 26 and 27, 1983. However, a transcript of those hearings has not been filed in this Court.
During this motion hearing, the trial judge stated, with regard to Harris's motion that all the proceedings of his new trial be recorded, "[T]he matter of the court reporter problem has been a perennial problem in this case, except on the trial of his case. . . . But since that time, it has been a very troublesome, perennial question to obtain a reporter who would report more than one hearing."
June 20, 1983: The State filed a response to Harris's motion to quash, arguing that the motion should be denied because the circuit court had overruled "essentially the same challenge" in its order partially granting the coram nobis petition.
Harris was arraigned.
July 18-23, 1983: Harris was tried and convicted. It appears that sometime after the end of the trial proceedings, the circuit court directed the court reporter to wait to transcribe the proceedings until after the resolution of the motion for new trial. *Page 870 
August 25, 1985: Harris filed a "motion for judgment of acquittal and/or motion for new trial." One of the grounds of that motion was the unconstitutional selection of the grand jury.
October 12, 1983: A hearing was held on the motion for new trial. At the conclusion of this hearing, the circuit judge ordered the transcription of the trial proceedings and kept the record open for "preliminary matters."
October 26, 1983: The circuit court denied the "motion for judgment of acquittal and/or motion for new trial." With regard to the grand jury issue, the circuit court found:
 "In the seventh ground of the motion, it is stated:
 "'The Defendant has moved the court to quash the indictment returned against him by the Escambia County Grand Jury in that it was unconstitutionally selected and empaneled because blacks and women were systematically excluded from the jury roll from which the Grand Jury was selected.' "
 "This ground of the motion states the gist of a more lengthily stated contention of this defendant in sub-paragraph 5(e) of his amended petition 'For Writ of Error Coram Nobis and/or Motion for Relief from Judgment' that after a lengthy hearing of evidence pertaining to the contention, was thoroughly considered by this trial judge and a determination adverse to this defendant, the petitioner therein, was made as shown by sub-paragraph 2(5) of the court's findings in its judgment rendered on said petition on June 30, 1981. The Court now reaffirms what it then stated, including the following:
 "'The Court further finds that the Jury Commission of Escambia County, including the commissioners and the clerk, in any alleged failure to comply fully with the law, did not intentionally or purposefully discriminate against either blacks or women in compiling a jury roll and that there was nothing about any system for the composition of the jury roll that was designed or calculated to exclude blacks and women from jury service by reason of their color or sex.' "
November, 1983: Harris's trial counsel withdrew and present counsel (Ruth A. Bourquin and Gary S. Guzy of Washington, D.C.) began representing Harris.
April 11, 1984: The transcript of the trial was completed and filed with the circuit clerk.
April 12, 1984: The record was filed in the Alabama Court of Criminal Appeals.
April 1984: Harris filed a motion to correct the record. Attached to and in support of that motion are the affidavit of Brown (dated April 17, 1984) and the affidavit of Hicks (dated April 17, 1984).
June 14, 1984: The "state's reponse to appellant's motions for record supplementation" was filed in the Court of Criminal Appeals. In that response, the State specifically consented to the granting of Harris's motions to supplement the record.
June 18, 1984: On Harris's motion pursuant to Rule 10(f), A.R.A.P., the circuit court ordered that the record on appeal be supplemented to include, among other items, "the transcript of 1978 coram nobis proceedings in which two weeks of evidence and argument were introduced and rulings by this court were made in relation to the claim of defendant-appellant of unconstitutional, systematic exclusion of blacks and women from the 1974 jury roll from which the Grand Jury which indicted Mr. Harris were selected." The written order of the circuit court states:
 "It appearing to the Court by conference telephone call among an attorney of record for each of the parties and the undersigned and by letter recently received by the undersigned from one of the attorneys for the appellee that the State of Alabama has no opposition to the granting of said motions of defendant-appellant Johnny Harris and consents to the granting of the same, the Court is of the opinion that the motions of defendant-appellant should be granted in all respects as hereinafter stated. *Page 871 
"* * * *
 "The motion as to the hearing of approximately two weeks' duration held in June, 1978, in the prior coram nobis proceeding in which evidence and testimony were presented in relation to the claim that the Grand Jury that indicted Mr. Harris was unconstitutionally composed due to systematic exclusion of blacks and women from the 1974 Escambia County jury roll from which the Grand Jury was selected, and which was incorporated into the record for the instant appeal and formed the basis for this Court's denial of Mr. Harris' repeated motions to quash the indictment and this Court's October 24, 1983, ruling on the Opinion and Judgment of the Court on motion for judgment of acquittal and/or motion for new trial, is hereby GRANTED."
October 1984: The record reflects that by this date it was discovered that neither a transcript of the coram nobis hearing nor the court reporter's notes of that hearing could be located.
July 8, 1985: The transcript of the January 1983 hearings was allegedly filed in the circuit court. That transcript has yet to be filed in this court.
June 9, 1986: After extensive efforts by defense counsel to locate the court reporters and to obtain a transcript of the coram nobis proceedings, Harris filed a "motion for new trial or, in the alternative, a motion for acceptance of substitutes for unavailable transcripts." Harris submitted affidavits as proposed substitutes for the missing transcripts.
August 12, 1986: A hearing was held on Harris's motion. During that hearing, the circuit judge sustained the State's objections to Harris's motion for a new trial and the dismissal of the indictment or the acceptance of the Brown affidavit as a substitute for the missing coram nobis transcript and stated, "Well, I don't think it needs an explanation. The man was — the coram nobis proceeding gave him everything he asked for; that is, he gave the — and that was that he would be given a new trial. He was given a new trial." The circuit court accepted the affidavits submitted by Harris as alternatives to the missing transcripts of the hearings on February 12 and 26 of 1982, and June 20, 1983, but rejected the Brown affidavit as to the substance of the coram nobis hearing.
During this hearing the circuit judge stated that "nothing that was brought in on that coram nobis is particularly pertinent to any question now except the one upon which the coram nobis was granted." The circuit judge also indicated that Harris was precluded from raising the grand jury issue because "that had been decided already." In Harris v. State, 352 So.2d at 469-71, the Alabama Court of Criminal Appeals held that Harris had abandoned his motion to quash the indictment and that the allegations of the motion were insufficient to state a prima facie case of racial discrimination in the selection of the grand jury. Harris has repeatedly and consistently asserted that the evidence presented at the 1978 coram nobis hearing showed that no waiver occurred or that the purported waiver had been "cured," and that more rigorous proof of his contentions of unconstitutional grand jury composition was offered through several different methods of analysis. The rulings of the circuit court at this hearing on August 12 appear inconsistent with, and contradictory of, his prior rulings.
November 1986: Harris filed a motion in the Court of Criminal Appeals seeking a remedy for the unavailability of transcripts.
January 27, 1987: In a written opinion, 552 So.2d 857, this court concluded that "it appears undisputed that Harris is entitled to some reasonable and sufficient alternative to a transcript of the evidence and proceedings of the 1978 coram nobis hearing, providing he was not at fault in requesting a transcription of those proceedings." This court remanded this cause for the circuit court to determine whether Harris was at fault in requesting a transcription of the coram nobis proceedings. The circuit court never made that determination, but, instead, set aside Harris's sentence to death on September 30, 1987. During this time, on May 29, 1987, the *Page 872 
Alabama Supreme Court denied certiorari in the opinion of this court issued January 27, 1987. A return to our order of remand was filed on October 9, 1987.
December 8, 1987: At the request of the Alabama Attorney General, this case was held in abeyance pending the decision of the Alabama Supreme Court in Thigpen v. Thigpen, 541 So.2d 465
(Ala. 1989).
March 10, 1989: In Thigpen, supra, the Alabama Supreme Court declared Ala. Code 1940, Tit. 14, § 319 — the statute under which Harris was indicted and convicted — unconstitutional. On March 31, 1989, the Supreme Court denied the State's application for rehearing. On April 5, 1989, the Court of Criminal Appeals allowed the parties time in which to file briefs "raising any issue deemed appropriate" in light ofThigpen.
June 16, 1989: The Court of Criminal Appeals issued a second order, set aside Harris's death sentence, and ordered the parties to file briefs on the issue of the timeliness of Harris's request for a transcript. The last response to our order was filed on August 7, 1989.
 II
There is no transcript or court reporter's notes of the 1978 proceedings. Apparently, the court reporters at the 1978 coram nobis hearing were David Williams and Angelica Jones Coxe. It has been determined that Williams's notes disappeared sometime after 1979, after he, "as instructed by the Clerk's office (upon going into private business) . . . turned over custody and control to the Court all shorthand notes taken by [him] during [his] five years at the courthouse." Williams's notes of the coram nobis hearing could not be located by the circuit clerk. Coxe's stenographic notes of the June 1978 hearing were destroyed in July or August of 1983.
Until October of 1980, there was no schedule for records retention. Ala. Code 1975, § 12-17-275, merely provided that the original stenographic notes of the official court reporter "shall be preserved by him and treated as part of the records of the respective courts, and upon his retirement from office, shall be turned over to the clerks of such courts."
On October 1, 1980, Rule 31, A.R.Jud.A., was adopted, providing for records maintenance and retention. As to court reporter's notebooks and machine notes, that schedule provides: "If there is no transcript in criminal cases, maintain notes 20 years from the date of the trial." The schedule also provides: "If there is no transcript in a civil case, keep notes five years from the date of the trial." See State of Alabama Unified Judicial System Records Retention Schedule, Form RM9, Rev 5/87, Schedule No. One-A, July 22, 1980, page 11, Item No. 66. Even applying the retention schedule applicable to civil cases, the court reporter's notes of the June 1978 coram nobis hearing should have been retained until June of 1983 — sixteen months after Harris's request for a transcript on February 12, 1982, but one year before the trial judge ordered the coram nobis hearing to be made a part of the record on June 15, 1984. As previously noted, the contention that the circuit court first ordered the 1978 proceedings to be made a part of the record in January of 1983 is not supported by the record before this Court because the transcript of the pretrial hearing held in January 1983, although ordered to be made a part of the record, has not been filed in this Court.
Although Harris has submitted an affidavit as a proposed substitute to the missing transcript, the State, throughout these entire proceedings, has never submitted its version of what occurred at the 1978 coram nobis hearing.
Harris has been represented by different counsel at each stage of the proceedings. Judge Leigh M. Clark, who presided over all of the proceedings, died on August 11, 1989, after a serious and prolonged illness. Under these facts, we find that there is no transcript of the 1978 coram nobis hearing or reasonable alternative thereto.
We further find that Harris was not negligent in his request for a transcript of the 1978 proceedings. Harris made his request upon learning that he was going to *Page 873 
be retried on the same indictment. We accept Harris's argument that the transcript of the coram nobis hearing was necessary only if and when the State decided to try him a second time. The transcript would not have been necessary had the State decided to forego any further prosecution, had there been a plea bargain agreement and a plea of guilty, or had the State reindicted Harris since the statute upon which the original indictment was based had been declared unconstitutional.
Hindsight and retrospective judgment indicate that Harris could have made his request earlier. However, that is not the standard employed in determining the timeliness of his request. "A defendant who claims the right to a free transcript does not, under our cases, bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight." Britt v. North Carolina,404 U.S. 226, 235, 92 S.Ct. 431, 435, 30 L.Ed.2d 400 (1971). See alsoDunn v. State, 733 S.W.2d 212, 215 (Tex.Cr.App. 1987) (The appellant "must show due diligence in requesting [the transcript] and that failure to file or have the [transcript] timely filed is not in any way due to negligence, laches, or other fault on the part of appellant or his counsel. Indeed, the circumstances in such cases should be viewed from the appellant's standpoint, and any reasonable doubt is resolved in favor of the appellant."). In this case, hindsight would also indicate that any earlier request for the transcript would have been denied just as Harris's initial requests were.
An important consideration in our finding that Harris was not negligent in his request is the fact that at his 1983 trial, all of the parties relied on the evidence and testimony presented at the 1978 hearing. The State consented to, and joined in, this adoption without objection and gained the advantage of knowing that the trial judge's ruling on the grand jury issue would be favorable. The circuit judge expressly relied on the prior proceeding in denying Harris's motion to quash the indictment.
Obviously, the circuit judge considered Harris's request for a transcript proper and timely, for he ultimately granted that request and ordered the transcript of the 1978 proceeding to be made a part of the trial record. The State also consented to this order without objection.
However, when it was discovered that there was no transcript, the State objected to Harris's proposed alternative but submitted no substitute or alternate account of the 1978 hearing. Rules 10(d) and (f) anticipate, although they do not require, that if there is no transcript or if any difference arises as to whether the record truly discloses what actually occurred, then the settlement of the issue shall be decided based upon the versions of the facts submitted by both parties. The circuit judge sustained the State's objection to Harris's proposed alternative to the transcript, and ruled, in effect, that Harris did not need a transcript of the coram nobis hearing because the judge had granted the coram nobis petition and Harris had received a new trial. The circuit court was clearly in error to the extent that it ruled that Harris was precluded from challenging the composition of the grand jury at his second trial because, on the appeal of his first conviction, this court had held that the issue had been abandoned and not properly presented. The merits of the constitutional issue were not decided on that first appeal. Harris alleges that new evidence was presented at the 1978 hearing to prove the unconstitutional selection and composition of the grand jury. The circuit court had ordered the 1978 proceeding to be made a part of the record and had relied on the evidence presented at, and his findings with regard to, the prior coram nobis proceeding in denying Harris his requested relief at his second trial. Yet, the circuit court had failed to provide Harris with some alternative to a transcript.
All of this results in the fact that Harris is precluded from raising on appeal the issue of the constitutionality of the grand jury through no fault of his own. Harris's challenge to the constitutionality of the grand jury appear to be substantial and does not appear to be a frivolous claim. Yet, with regard to that issue, Harris has *Page 874 
been denied his constitutional right to appeal. Without a transcript of the 1978 hearing or some alternative substitute, this Court cannot review the findings and order of the circuit court denying Harris's motion to quash. Fundamental fairness and due process dictate that if a trial court relies on evidence and testimony presented at a prior proceeding as a basis for its ruling that prior proceeding must be made a part of the record.
Such a result is also mandated by the requirements of the equal protection clause of the Fourteenth Amendment of the United States Constitution. "[T]here can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." Britt v. North Carolina,404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971). "Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case." Britt,404 U.S. at 228, 92 S.Ct. at 434. Here, Harris has made a particularized showing of need. Moreover, the burden is on the State to show that an alternative to a transcript will suffice for an effective appeal. Mayer v. City of Chicago,404 U.S. 189, 195, 92 S.Ct. 410, 415, 30 L.Ed.2d 372 (1971).
Having determined that Harris was not negligent in requesting a transcript, we find that the appropriate relief is the dismissal of the indictment rather than merely the granting of a new trial. In a case such as this, the rule is that "the proper course to be taken by this Court is to award the petitioner the maximum relief that he could have obtained if his appeal had been properly perfected and he had been successful in prosecuting it." Coffman v. Bomar, 220 F. Supp. 343,349 (M.D.Tenn. 1963). See also Sutton v. Lash,576 F.2d 738, 746 (7th Cir. 1978).
The present posture of this case and the state of the record foreclose any meaningful and reasonable appellate review of this case. Therefore, the judgment of conviction is reversed. The indictment upon which that conviction is based is hereby ordered dismissed.
CONVICTION REVERSED;
INDICTMENT ORDERED DISMISSED.
All Judges concur.