The appellant, Mathew Vincent, was indicted for trafficking in marihuana and was convicted of the lesser offense of possession of marihuana. He was sentenced to a six-year split sentence, with nine months to serve in the penitentiary and five years to *Page 1291 
serve on probation. He was also fined $2500. He raises three issues on this appeal of that conviction.
 I
Applying the four-part test set out in Barker v.Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192,33 L.Ed.2d 101 (1972), we hold that the appellant was not denied his Sixth Amendment right to a speedy trial. The following chronology of events is relevant:
 August 14, 1987 ........Arrest January 8, 1988 ........Indictment February 24, 1988 ......Motion to suppress evidence filed by defendant March 9, 1988 ..........Set for trial on April 11, 1988 April 1, 1988 ..........Continued to May 6, 1988 May 6, 1988 ............Set for trial July 25, 1988 July 25, 1988 ..........Trial "rolled over" to August 1, 1988 August 1, 1988 .........Set for suppression hearing September 8, 1988 September 8, 1988 ......Suppression hearing September 13, 1988 .....Continued to October 21, 1988 October 21, 1988 .......Continued to December 16, 1988 December 15, 1988 ......Continued to February 3, 1989 February 3, 1989 .......Set for trial on March 27, 1989 March 27, 1989 .........Set for trial on April 17, 1989. Judge's bench notes recite, "This case will not be continued from this date." April 21, 1989 .........Set for trial June 12, 1989 June 14, 1989 ..........Continued to September 11, 1989 September 7, 1989 ......Motions for assistance of a jury selection expert and for disclosure of impeaching information filed by defendant September 13, 1989 .....Set for trial on December 4, 1989 September 14, 1989 .....Subpoenas issued for December 4 December 6, 1989 .......Oral motion to dismiss for failure to grant a speedy trial by defendant. Denied. Case preferentially set for trial on February 26, 1990.
 Judge's bench notes recite, "This case was called out for trial on this date and [the court] was informed by the district attorney, Bill Neumann, that the State could not proceed due to unavailability of a key State's witness, Mary Holt from State Forensics office. Mrs. Holt was unavailable due to the death of her grandfather. Both sides were advised that the case would be tried on this date. The court reluctantly grants the State's motion for continuance and is assured that this case will be tried on the next trial docket or it will be dismissed with prejudice." December 8, 1989 .......Subpoenas issued for February 26, 1990 February 9, 1990 .......Written motion to dismiss for failure to grant a speedy trial March 2, 1990 ..........First trial; mistrial declared because of hung jury March 20, 1990 .........Set for trial June 4, 1990; consolidated for trial with CC-88-079 *Page 1292 
 March 23, 1990 .........Subpoenas issued for June 4, 1990 June 12, 1990 ..........Set for trial on August 27, 1990 June 13, 1990 ..........Subpoenas issued for August 27 August 27, 1990 ........Set for trial on September 17, 1990 September 17, 1990 .....Second trial; verdict of guilty.
Length of the delay. The right to a speedy trial is triggered when a warrant of arrest is issued. Steeley v.City of Gadsden, 533 So.2d 671, 678 (Ala.Cr.App. 1988) (adopting dissenting opinion of Bowen, J., in Watson v.State, 389 So.2d 961, 965 (Ala.Cr.App. 1980)). The time from the appellant's arrest to his first trial was 31 months, slightly over two and one-half years. That time period is lengthy enough to trigger an inquiry into the remaining factors. See Barker, 407 U.S. at 530,92 S.Ct. at 2192; Arnett v. State, 551 So.2d 1158, 1159
(Ala.Cr.App. 1989).
Reasons for the delay. After this case was originally set for an April 11, 1988, trial date, there appear to have been 12 continuances before December 6, 1989. The appellant first asserted his right to a speedy trial on December 6, 1989. At a hearing on the appellant's oral motion for a speedy trial, defense counsel made the following observations, undisputed by the prosecution or the court, regarding some of the reasons the case had been continued:
 "MR. LUKER [defense counsel]: Up until the time Richard Bite's client pled guilty, this case was passed a couple of times at the defendant's request. And I made that request. We discussed it with the Court. Since Richard Bite's client has pled this case has been set I believe three times, one of which the case was passed because Mary Rhodes was unavailable because she was on maternity leave because she adopted a baby.
 "Another time it was passed most recently because a state's witness, Harmon, I believe, Officer Harmon from Hoover was at the FBI academy. And I think at that time there was a problem with another case that was before the Court and we were going to get to it Thursday afternoon late or Friday.
 "We were told on two occasions prior that this case was not going to be continued any more come high water or any other problem.
 "THE COURT: Seems to have a hollow ring to it now, doesn't it?
 "MR. LUKER: Yes, sir. And we have been prepared this week and we knew we were starting this week. In fact, I talked with the Court last Friday and we understood. We've got out-of-town witnesses, we've got out-of-state witnesses, and we've got a psychologist and jury selection expert that we've had on standby all week. And it's probably cost us in the neighborhood of seven to ten thousand dollars to be prepared, not counting attorney time, just getting ready for trial, to be prepared to go to trial today.
 ". . . . This continuance is extremely prejudicial to the defendant through no fault of his own on the last two occasions, maybe the last three occasions. It is prejudicial. It severely inhibits our ability to be prepared for trial and have our witnesses lined up and be ready to go.
". . . .
 "THE COURT: . . . . I understand the position you are in because it does put you in a position of hardship, and it's under the most extreme circumstances that I would do it because I probably fuss at the defense more than I fuss
at the state on this for getting ready and it's not necessarily your fault, I know that. It's not your fault because I don't know of any occasion where you have asked for a continuance.
 "But I assure you that this case — I think I said that last time, didn't I?
"MR. LUKER: Yes, sir.
 "THE COURT: In the event that the state is not ready to proceed on the next occasion it will be dismissed [with] prejudice *Page 1293 
or will go forward, when the state can't go any further and at that time I'll grant it. But in any event it will be disposed of with jeopardy on the next occasion.
 "MR. LUKER: Your Honor, I move the Court at this time to declare [the appellant] indigent and provide extraordinary expenses available to [him] for the services of these experts that we've been paying to be here that was through no fault of our own, and attorney's fees in excess of the amount that is normally considered the limit for cases that are noncapital.
 "THE COURT: Put it in a motion and let me consider it on a motion. I'll consider it. I don't know if I'll grant it. I'll look it over and see. I will consider it." R. 4-8.
From the foregoing exchange, it is evident that two of the continuances in this case were granted at the appellant's request and three of the continuances were granted at the State's request, because of the unavailability of prosecution witnesses. While we are unable to determine exactly which two postponements were requested by the defense and which three were requested by the State, we can fairly assume that the two defense requests occurred early in the case history and that the three State requests happened closer to December 6, 1989.
The unavailability of an essential prosecution witness is a valid reason for delay. Lewis v. State,469 So.2d 1291, 1294 (Ala.Cr.App. 1984), affirmed sub nom. Ex parteBlake, 469 So.2d 1301 (Ala. 1985); Wade v. State,381 So.2d 1057, 1060 (Ala.Cr.App.), cert. denied,381 So.2d 1062 (Ala. 1980). A neutral reason can be attributed to postponements because of the absence of prosecution witnesses who were on maternity leave, were attending the FBI Academy, and were experiencing a death in the family.
Although we cannot ascertain from the record either the reason for, or the party who requested, the remaining 7 of the 12 continuances, it appears likely that some of them may have been occasioned by the appellant's motion to suppress evidence. "[C]ourts have found reasonable the delay while pretrial motions . . . are resolved." Ringstaff v. Howard,885 F.2d 1542, 1544 (11th Cir. 1989) (9-month delay pending state court decision on constitutionality of death penalty statute not unreasonable), cert. denied, 496 U.S. 927, 110 S.Ct. 2622,110 L.Ed.2d 643 (1990); United States v. Guerrero,756 F.2d 1342, 1349-50 (9th Cir.) (20-month delay during appeal of pretrial suppression order was justified and did not weigh at all against government), cert. denied, 469 U.S. 934,105 S.Ct. 334, 83 L.Ed.2d 270 (1984).
Since defense counsel assigned to the State the responsibility for only three of the 12 continuances, accepted himself the responsibility for two of the continuances, and the State did not dispute this characterization of the case history, it is likely that some of the remaining seven continuances were due to the fact that the case simply was not reached on a number of occasions because of a congested court docket. The record demonstrates that there was
 "no purposeful or deliberate attempt on the part of the State to delay prosecution of the case and that the delay was attributable to a crowded court docket. See, e.g. Mathis [v. State, 501 So.2d 509 (Ala.Cr.App. 1986), overruled on other grounds, Turner v. State, 584 So.2d 925 (Ala.Cr.App. 1991)]. 'In order to assert that a speedy trial was denied, the delay must be purposeful or oppressive,' Noe v. State, 391 So.2d 151, 152
(Ala.Crim.App. 1980). Neutral reasons which cause delay do not ordinarily require a dismissal of the case. See United States v. Castellana, 461 F. Supp. 233 (M.D.Fla. 1978). Neutral reasons may include crowded, congested court dockets. See, e.g., United States v. Canales, 573 F.2d 908 (5th Cir. 1978) (crowded court docket does not constitute a complete excuse but weighs slightly against defendant's argument); United States v. Rodriguez, 510 F.2d 1 (5th Cir.) [cert. denied, 423 U.S. 915, 96 S.Ct. 222, 46 L.Ed.2d 144] (1975). We find that the congested trial docket was a *Page 1294 
neutral reason for the delay and should not weigh heavily against the State."
Archer v. State, [Ms. CR-89-493, April 11, 1991] ___ So.2d ___ (Ala.Cr.App. 1991). These neutral reasons for delay prior to December 6, 1989, do not weigh against the State, especially in view of the fact that the appellant did not raise a complaint during that time.
The appellant's assertion of his rights. The appellant made his first speedy trial objection on December 6, 1989, almost two years and four months after he was arrested. "The fact that [he] did not assert his right to a speedy trial prior to [December 1989], tends to suggest that he either acquiesced in the delays or suffered only minimal prejudice prior to that date. Stevens v. State, 418 So.2d 212,214 (Ala.Cr.App. 1982)." Lewis v. State, 469 So.2d at 1294. Under the circumstances, we conclude that the time prior to December 6, 1989, can be deducted from the overall delay because the postponements were either assignable to the appellant or were neutral, and the appellant did not assert his rights.
Only three months elapsed between the appellant's first assertion of his right to a speedy trial and his first trial. The fact that the trial occurred so soon after the appellant voiced his first complaint indicates the seriousness with which the trial court took the appellant's grievance and the responsiveness of the system to the appellant's speedy trial objection.
Although the record presents us with no reason for the five-and-one-half-month delay between the appellant's first trial, which ended in a mistrial on March 2, 1990, and his eventual conviction on September 17, 1990, that time period was not inordinately long.
Prejudice suffered by the appellant. The appellant's only claim of prejudice on December 6, 1989, was that he had incurred expenses in preparing for a trial that was continued at the last minute. The trial court indicated that it would consider recompensing the appellant for those expenses if the appellant would document his argument by written motion. The appellant later filed a motion to be declared indigent for purposes of trial. The court's handwritten notation on that motion recites that the request was "to be granted in part." R. 956.[1]
Because the appellant made no further speedy trial motions during the five and one-half months between his first and second trials, we can assume that he suffered no further prejudice during that time period. We therefore find that the appellant acquiesced in or suffered no prejudice other than financial, for most (27 to 28 months) of the 31-month delay in this case. For the financial prejudice he did suffer, he appears to have been granted partial relief by order of the trial court.
Weighing all of the Barker factors, we conclude that the appellant was not denied his right to a speedy trial.
 II
The trial court did not err by denying the appellant's motion to compel the State to disclose the identity of a confidential informant.
Officer Keith Harmon of the Hoover Police Department was the affiant for the search warrant. His affidavit stated:
 "In the last 48 hours I have received information from a confidential, reliable informant who in the last 48 hours was present inside the apartment at 1151 Mountainside Apartments, on the lower level, the first apartment on the right, the residence of Bobby Sweat, and that while inside said informant observed a quantity of marijuana, a controlled substance. Said informant has demonstrated to me his ability to recognize marijuana and has in the past given me information that was proven to be true and correct and has led to arrests for Violation of Alabama Controlled Substances Act. *Page 1295 
"Based on the above information, I have probable cause to believe and do believe that a quantity of marijuana, a controlled substance, is presently being unlawfully stored at the residence of Bobby Sweat at 1.151 Mountainside Apartments, Birmingham, Jefferson County, Alabama." R. 978.
The appellant was not named in the warrant and did not live at the named address. However, when the warrant was executed at the residence of Bobby Sweat on August 14, 1987, the appellant was present. Officer Harmon testified at the suppression hearing and at trial that his confidential informant did not mention the appellant or provide him with any information that the appellant would be present in Sweat's apartment. Harmon knew, however, that the appellant would be there when the warrant was executed because he had received that information from one Ken Logan.
The day before the execution of the search warrant, Officer Harmon had searched the residence of Ken Logan. Harmon found one-half pound of marihuana in Logan's truck and he talked to Logan "about a way to help himself." S.R. 49. Logan agreed to help Officer Harmon "get Mathew Vincent." S.R. 33. The evidence regarding which party first mentioned the appellant's name is in conflict, with Logan claiming that the officer asked for the appellant specifically, saying "you are going to go to jail unless we get Matt Vincent," R. 600, and Officer Harmon claiming that Logan first mentioned Vincent as someone about whom he could provide information.
At the suppression hearing, Logan testified that after he agreed to help Officer Harmon he called the appellant and asked the appellant where he (Logan) could get some marihuana. The appellant told Logan to "meet him at Bobby Sweat's apartment, and . . . there would be a package ready for [Logan]." S.R. 45. At trial, however, Logan denied that the appellant was involved in an arrangement to provide him with contraband. Logan stated that when he asked the appellant where he could find marihuana, the appellant said "he didn't know, but [Logan] could try Bobby Sweat." R. 610. Logan admitted at trial that he had "set up" the appellant by arranging for the appellant to be at Sweat's apartment when the warrant in this case was executed. Logan told the appellant "there is something very important that I need to talk to you about and please meet me up at Bobby [Sweat's] apartment." R. 614. The appellant's testimony coincided with Logan's trial testimony. He said, "Ken [Logan] called me, and . . . asked me if I knew anybody that had any marijuana, and I said no. And then [Logan] said you sure, and I said you can check with Bobby [Sweat]. And then we kind of just hung up. And [Logan] called me back . . . later . . . [a]nd [Logan] said meet me up at Bobby's. I said sure, no problem." R. 648-49.
It is undisputed that Logan had not previously been present in Sweat's apartment, had not seen marihuana there within 48 hours of the preparation of the search warrant affidavit, and had not provided Officer Harmon with information in any other case. It is also undisputed that Logan passed on to Officer Harmon information that the appellant would be at Bobby Sweat's apartment at a designated time, and that Harmon met with Logan immediately prior to having the instant warrant signed by the issuing judge.
At the hearing on the motion to suppress, and again at trial, Officer Harmon denied that Logan was the confidential informant. Harmon admitted that he had used Logan's information, in the sense that he had waited to execute the warrant on Bobby Sweat's residence until he thought the appellant would be there, but he maintained that he had originally received information about contraband at Sweat's residence from another source, and that he did not use any of Logan's information to draft the search warrant affidavit. After the appellant was arrested, Harmon called Logan to thank him for the information. Logan was not prosecuted for any offense.
At the hearing on the motion to suppress and again at trial, defense counsel cross-examined Officer Harmon in an effort to establish that Harmon was lying when he *Page 1296 
said Logan was not the confidential informant. When Harmon admitted that he had kept notes regarding what his confidential informant told him, defense counsel asked the court to review those notes in camera in order to determine whether Logan was the informant. The court granted this request and, after reviewing the notes, informed all parties that he was satisfied that Logan was not the confidential informant. Defense counsel then asked that the notes be sealed and preserved for purposes of appeal.
On appeal, the appellant argues that the identity of the confidential informant should have been disclosed for two reasons: (1) because that information was "relevant and helpful to the defense . . . or . . . essential to a fair determination of [the] cause," Roviaro v. United States,353 U.S. 53, 60-61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957), and (2) because that information was necessary to a determination of the basis for probable cause. Brief of the Appellant at 7-8.
The Attorney General contends that the appellant's second basis for requesting disclosure of the informant's identity — to determine whether the search warrant was supported by probable cause — has been raised for the first time on appeal and is not preserved for review. We disagree. The issue was fairly raised in the appellant's "Memorandum in Support of Motion to Suppress," in which defense counsel cited and discussed Franks v. Delaware, 438 U.S. 154, 155-56,98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978), for the following proposition:
 "[w]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."
R. 948 (emphasis added by defense counsel).
If, as the appellant contended, Logan was the confidential informant, then Officer Harmon's affidavit was false in two respects: Logan neither saw contraband in Sweat's apartment within the preceding 48 hours, nor previously provided Harmon with information leading to other drug arrests. The falsity of either allegation would, no doubt, have resulted in voiding the search warrant. Under Franks v.Delaware, the appellant was entitled to a hearing on this issue, and he received one.
At the suppression hearing, defense counsel vigorously cross-examined Officer Harmon and convinced the trial court to read the notes Officer Harmon had made of his discussions with the informant. After the hearing and after an incamera review of the notes, the trial court concluded that Harmon had not lied and that Logan was not the confidential informant. Thus, the appellant received all that he was entitled to under Franks v. Delaware: a decision by the judge that the affiant made no false statements regarding the confidential informant in the warrant affidavit.
The factual finding by the trial judge that Logan was not the confidential informant effectively disposed of the appellant's argument that he was entitled to disclosure of the informant's identity under Roviaro. Roviaro mandates disclosure if the informant's identity is "relevant and helpful to the accused's defense." 353 U.S. at 62, 77 S.Ct. at 628. The appellant has made no argument that the identity of an informant other than Logan was relevant to his defense.
 "While the prosecution's privilege to withhold an informant's identity may be defeated, 'the burden is on the defendant to demonstrate the need for the disclosure.' *Page 1297 United States v. Fixen, 780 F.2d 1434, 1439 (9th Cir. 1986), quoted in Lightfoot v. State, 531 So.2d 57, 59 (Ala.Cr.App. 1988). The appellant did not, at trial, make any showing as to the . . . expected testimony [of an informant other than Logan], state how he thought the informant's testimony could help his case, or otherwise demonstrate any 'need for the disclosure.' However, he did request that the trial court make an in camera determination as to whether the informant had any exculpatory knowledge.
 "In cases such as this, . . . an in camera hearing is an appropriate way to perform the Roviaro balancing test. . . . However, the [trial court's] in camera [review of Harmon's notes] with regard to the issue of [the informant's] identity was not helpful to the appellant."
Berry v. State, 581 So.2d 1269, 1273-74
(Ala.Cr.App. 1991) (emphasis in original).
Taking Officer Harmon's testimony as true — as the trial court did — the record does not permit a finding that the identity of Harmon's confidential informant would have been relevant or helpful to the defense. Harmon testified that his informant never mentioned the appellant; instead, he merely told Harmon the location of contraband. Under the circumstances, disclosure of his identity was not required. SeeUnited States v. Skeens, 449 F.2d 1066 (D.C. Cir. 1971); Berry v. State, 581 So.2d at 1274.
 III
The trial court ordered that Officer Harmon's notes regarding his discussions with the confidential informant be sealed and included in the record. When this record was being compiled for purposes of appeal, it was discovered that the notes were missing. The appellant filed a motion under Rule 10(f), A.R.App.P., to correct the record, and the motion was set for a hearing.
There is neither a transcript of that hearing (if in fact one were held), nor any order by the court pertaining to the missing notes in the record. We have before us only a certification by the circuit clerk that "the sealed notes were not turned in to us. We do not know the whereabouts of the sealed notes." S.R. 11.
The appellant contends that he has been denied his due process right to appellate review by the disappearance of the notes. He also argues, in connection with the speedy trial issue in Part I, that the disappearance of the notes is indicative of the prejudice he suffered by the delay of his trial.
The Attorney General argues that this issue is governed by cases dealing with the State's failure to preserve potentially exculpatory evidence. See, e.g., Arizona v.Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281
(1988) (state's negligent failure to preserve evidence potentially useful to defense not a denial of due process);California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528,81 L.Ed.2d 413 (1984) (state has no constitutional duty to preserve breath samples; prosecution must preserve only that evidence which is exculpatory on its face); United Statesv. Valenzuela-Bernal, 458 U.S. 858, 102 S.Ct. 3440,73 L.Ed.2d 1193 (1982) (in prosecution for smuggling illegal aliens, Government could deport witnesses before accused interviewed them if it made a good faith determination that the witnesses had no evidence favorable to accused). Accordingly, the State maintains that in the absence of a showing of bad faith on the part of the State, the appellant has no remedy for the loss of Officer Harmon's notes.
The Youngblood line of authority, while somewhat instructive, is not exactly on point. Most obviously, but significantly, the evidence in the foregoing cases had not been ordered to be preserved by a judge. In those cases, the prosecution unilaterally disposed of evidence which was potentially helpful to the accused before the defense could utilize it and before a neutral judicial officer could review it. Here, the defense was able to utilize the Harmon notes by asking the court to review them, and the court ordered that the notes be preserved. We therefore find this case to be more analogous to Harris v. State, 552 So.2d 866
(Ala.Cr.App. 1989). *Page 1298 
In Harris, this Court held that when the accused made a timely request for a transcript of a coram nobis proceeding challenging the composition of the grand jury that indicted him, but the transcript was later lost and the State offered no alternative to the transcript, the accused was entitled to " 'the maximum relief that he could have obtained if his appeal had been perfected and he had been successful in prosecuting it.' Coffman v. Bomar, 220 F. Supp. 343,349 (M.D.Tenn. 1963). See also Sutton v. Lash,576 F.2d 738, 746 (7th Cir. 1978)." Harris, 552 So.2d at 874.
Because there is no indication in the record that the issue of the missing notes was ever addressed by the court below, we remand this cause for a hearing and a determination whether the contents of the lost communication can be reconstructed by Officer Harmon or by the trial judge who reviewed it in camera. At the conclusion of the hearing, the trial judge shall enter written findings of fact. A transcript of the hearing and the written order of the trial court shall be filed in this Court within 60 days from the date of this opinion.
REMANDED WITH DIRECTIONS.*
All Judges concur.
[1] Although neither the appellant nor the State directs our attention to the fine imposed in this case, the trial court's sentencing order includes the following:
 "As additional punishment the defendant is ordered to pay a fine in the [amount of] $2500.00 of which $1440.00 is untaxed." R. 900 (emphasis added).
* Reporter of Decisions' note: Following the remand, this case was dismissed on November 13, 1992, on the appellant's motion.