The State appeals from the trial court's order granting a motion to dismiss the indictment charging the appellee, Harold Prince White, with trafficking in cocaine, a violation of §13A-12-231, Ala. Code 1975; possession of marijuana in the second degree, a violation of § 13A-12-214, Ala. Code 1975; and two counts of unlawful distribution of cocaine, violations of §13A-12-211, Ala. Code 1975.
The trial court dismissed the indictment on the grounds that White was denied his right to a speedy trial. The State argues that the trial court erroneously allowed White to make his showing of prejudice in an ex parte hearing without the State's being afforded an opportunity to respond to White's claims of prejudice and, further, that the trial court erred in determining that White's Sixth Amendment right to a speedy trial had been violated. White argues that the motion was properly granted and that the ex parte proceedings were necessary to protect his constitutional rights. *Page 899 
On March 23, 2002, White was arrested by officers working with a confidential informant after he allegedly sold cocaine to the informant on two occasions; he posted bond and was released that same day. On June 27, 2005, the grand jury returned the indictment. On July 6, 2005, White filed a motion to dismiss on speedy-trial grounds. On September 28, 2005, the State filed a response to White's motion to dismiss, arguing that White had waived his right to a speedy trial by failing to assert his right until July 6, 2005; that the delay in issuing the indictment was caused by the investigation of and subsequent prosecution in the federal court of the arresting officer for improprieties involving confidential informants, including the informant used in the drug purchases that formed the basis for the charges against White; and that White was not prejudiced by the delay. On September 28, 2005, the trial court conducted an evidentiary hearing on White's motion to dismiss on speedy-trial grounds and on White's motion to suppress certain evidence. After hearing the bulk of the argument on White's speedy-trial motion, the trial court allowed White to present his showing of prejudice ex parte. On September 30, 2005, the trial court issued an order granting White's motion to dismiss because he had been denied his right to a speedy trial. This appeal followed.
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101 (1972), the United States Supreme Court set forth four factors that a court must weigh when reviewing a speedy-trial claim: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his right to a speedy trial; and (4) the degree of prejudice the accused suffered because of the delay.
 A. Length of Delay "In Alabama, `[t]he length of delay is measured from the date of the indictment or the date of the issuance of an arrest warrant — whichever is earlier — to the date of the trial.' Roberson [v. State], 864 So.2d [379,] 394 [(Ala.Crim.App. 2002)]. Cf. § 15-3-7, Ala. Code 1975 (`A prosecution may be commenced within the meaning of this chapter by finding an indictment, the issuing of a warrant or by binding over the offender.'); Rule 2.1, Ala.R.Crim.P. (`All criminal proceedings shall be commenced either by indictment or by complaint.')."
Ex parte Walker, 928 So.2d 259, 264 (Ala. 2005). The length of the delay acts as the threshold requirement — unless the delay is excessive, the Court need not consider the three remaining Barker factors. See Irvin v.State, 940 So.2d 331, 342 (Ala.Crim.App. 2005).
Here, White was initially arrested on March 23, 2002, and the hearing on his motion to dismiss for lack of a speedy trial was conducted on September 28, 2005, a delay of approximately 42 months. The State concedes that this delay was presumptively prejudicial. We agree. See, e.g., Irvin v. State, supra (32-month delay presumptively prejudicial); Lofton v.State, 869 So.2d 533 (Ala.Crim.App. 2002) (41-month delay presumptively prejudicial); and Parris v. State,885 So.2d 813 (Ala.Crim.App. 2001) (40-month delay presumptively prejudicial). Thus, we proceed to examine the remainingBarker criteria.
 B. Reasons for the Delay
In Ex parte Walker, supra, the Alabama Supreme Court stated:
 "The State has the burden of justifying the delay. See Barker, 407 U.S. at 531; Steeley v. City of Gadsden, 533 So.2d 671, 680
(Ala.Crim.App. 1988). *Page 900 Barker recognizes three categories of reasons for delay: (1) deliberate delay, (2) negligent delay, and (3) justified delay. 407 U.S. at 531. Courts assign different weight to different reasons for delay. Deliberate delay is `weighted heavily' against the State. 407 U.S. at 531. Deliberate delay includes an `attempt to delay the trial in order to hamper the defense' or `"to gain some tactical advantage over (defendants) or to harass them."' 407 U.S. at 531 n. 32 (quoting United States v. Marion, 404 U.S. 307, 325 (1971)). Negligent delay is weighted less heavily against the State than is deliberate delay. Barker, 407 U.S. at 531; Ex parte Carrell, 565 So.2d [104,] 108 [(Ala. 1990)]. Justified delay — which includes such occurrences as missing witnesses or delay for which the defendant is primarily responsible — is not weighted against the State. Barker, 407 U.S. at 531; Zumbado v. State, 615 So.2d 1223, 1234 (Ala.Crim.App. 1993) (`"Delays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test of Barker."`) (quoting McCallum v. State, 407 So.2d 865, 868 (Ala.Crim.App. 1981))."
Ex parte Walker, 928 So.2d at 265.
At the hearing on White's motion to dismiss, the State presented evidence indicating that the vast majority of the delay was because of an investigation into allegations that David Scogin, the arresting officer and former director of the Lauderdale County Drug Task Force, had been engaged in illegal activity, some of which involved the informant used to allegedly make the controlled drug purchases from White. The evidence further indicated that Scogin pleaded guilty in federal court to three charges stemming from those actions. The trial court made the following findings of fact in its order dismissing the case:
 "Mr. David Scogin, then director of the Lauderdale County Drug Task Force, obtained a search warrant for the search of the auto body shop of defendant Harold Prince White on March 23, 2002. According to the warrant of arrest contained in the court file, Mr. Scogin found the defendant to be in possession of a quantity of cocaine at the body shop when the warrant was executed on the same date the warrant was obtained. Mr. White was arrested and charged with trafficking in cocaine, as well as unlawful distribution of cocaine based on the sales of cocaine by Mr. White to an informant that were alleged to have occurred on March 20, 22, and 23. Mr. White posted bond and was released shortly after his arrest.
 "On June 21, 2002, the defendant requested a preliminary hearing. The District Court Judge entered an order dated January 2, 2004 that, if the defendant had not been indicted, a preliminary hearing would be scheduled for January 29, 2004. There is no indication a preliminary hearing was ever held or that the case was thereafter bound over for action of the Grand Jury.
 "Mr. Scogin reported that the office of the Lauderdale County Drug Task Force had been burglarized and the cocaine seized from Mr. White had been stolen. That was subsequently shown to be false. The Department of Forensic Sciences returned two certificates of analysis showing the contraband was submitted to the lab by members of the Drug Task Force on March 27, 2002 and May 3, 2002. All testing was completed on all evidence submitted by January 22, 2004.
 "The Alabama Bureau of Investigation ["A.B.I."] was called upon by the then District Attorney Steve Graham to investigate the alleged burglary of the Drug Task Force office. The inquiry *Page 901 
became a general investigation of the activities of the Task Force culminating in a ten count federal indictment of Mr. Scogin, his plea of guilty and incarceration. The drug case against Mr. White was part of the A.B.I. investigation. Handwriting analysis showed that some of the payment vouchers to the undercover informant had been forged by Mr. Scogin.
 "District Attorney Steve Graham left office in the fall of 2003. He never presented Mr. White's case to the Grand Jury or made any effort to bring Mr. White to trial. Mr. Graham was replaced by Mr. Billy Jackson, who served until January of 2005. Mr. Jackson never presented Mr. White's case to the Grand Jury or made any effort to bring Mr. White to trial. Only after Mr. Connolly took office did the State pursue the prosecution and an indictment was returned June 27, 2005.
 "Mr. Scogin was transported from the federal prison for purposes of this hearing. When called upon to testify he invoked his Fifth Amendment rights and refused to answer any questions concerning the procuring of the search warrant. The undercover informant . . ., was also present and did testify."
(C. 51-53.) The trial court further made the following findings regarding the reasons for the delay:
 "The State argues strongly that the ongoing investigation into the corrupt practices of the director of the Lauderdale County Drug Task Force is adequate explanation for the delay. Only after Mr. Scogin was convicted November 2, 2004, did the A.B.I. investigation end — less than 8 months before the State indictment was returned.
 "Mr. Marc McCormick was the lead investigator for the A.B.I. during its inquiry, and he gave testimony at the hearing before this Court. He testified that the forgeries of the payment vouchers to Mr. Johnson, the undercover informant, had no connection with whether Mr. White did or did not sell drugs to the informant or possess drugs on March 23, 2002. The District Attorney's office was always in possession of its case files and there was no reason, according to Mr. McCormick, for the A.B.I. probe to cause any delay in the prosecution of Mr. White.
 "There is no indication that the State deliberately attempted to delay the trial in order to hamper the defense. If anything the successful prosecution of Mr. Scogin in federal court, who was a key witness for the state in this case, would be beneficial for the defense. From the evidence before this Court the delay can only be attributed to the negligence of two prior administrations of the District Attorney's Office. Mr. Connolly and his staff, to their credit, have been diligent and vigorous in their prosecutorial efforts but they had no control over the lack of effort before January 2005.
 "Deliberate delay to frustrate the defense would be weighed heavily against the State. A valid reason would serve to justify appropriate delay.
 "`"Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him. . . . Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. *Page 902 
And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary negligence grows. Thus, our toleration of such negligence varies inversely with its protractedness. . . . Although negligence is not weighed as heavily against the State as a deliberate attempt to delay the trial in order to hamper the defense, it must nevertheless be weighed against the State "since the ultimate responsibility for such circumstances must rest with the government rather than the defendant."
 "`Barker, 407 U.S. at 531.
 "Draper v. State, 886 So.2d 105, [110 (Ala.Crim.App. 2002)]."
(C. 54-55.)
The record supports the trial court's findings as to the reasons for the delay. There is no indication in the record of deliberate delay by the State in an effort to prejudice White's defense or to enhance its own case. Thus, while this factor weighs against the State, it does not weigh as heavily as it would have had the delay been found to be an intentional attempt to impair the defense or to enhance the State's case. See Exparte Walker, supra.
 C. Assertion of the Right
At the hearing on White's motion to dismiss, the prosecution asserted that the defense had requested a preliminary hearing shortly after White's arrest but had not followed up after the initial preliminary hearing was continued. The trial court then stated:
 "Well, [the district court] case action summary sheet is part of this court file. The dates on that document show 6/21/02 felony first. Prelim requested June 27th, `02 at 1:30. I guess that would be the setting of the prelim. 6/27/02 waived to grand jury, Judge Paseur. And 6/28 copy to DA and attorneys. Then on 1/2/04 there's an entry by Judge Paseur if Defendant has not been indicted, preliminary is scheduled for 1/29/04 at 1:30. Clerk to notify party. The last entry is 1/6/04 copy to DA and attorneys. Anything else from the State?"
(R. 30.) The record also indicates that White filed a demand for a preliminary hearing on December 29, 2003, and that he filed his motion to dismiss the case for lack of a speedy trial on July 6, 2005, approximately one week after the indictment was returned by the grand jury.
The trial court noted in the order dismissing the case:
 "Despite the fact that the defendant was represented by experienced counsel throughout the 3 1/2 year delay he made no motion requesting a speedy disposition of his case. The issue was first raised in his motion to dismiss on July 6, 2005. At the hearing, counsel for the defendant candidly admitted that the delay was helpful to the defense in some respects. The conviction of Mr. Scogin would adversely affect his credibility at trial. It would appear that the defendant and his attorney opted to sit on their rights either because doing so could be beneficial to them or because they hoped the case would never be prosecuted at all.
 "A pre-indictment motion for speedy trial would likely have had little effect in speeding the process because this Court has no authority to direct the actions of the Grand Jury, to set its docket or prohibit it from investigating any matter it sees fit. An appropriately timed pre-indictment motion to dismiss the case, if granted, could have precluded further prosecution if the Statute of Limitations had run. The defendant chose not to *Page 903 
pursue this strategy and his failure to assert his right to a speedy trial for many months is to be weighed against him in this analysis. The defendant's post-indictment motion was filed in a timely manner."
(C. 55-56.)
Our review of the record reveals no assertion of the right to a speedy trial in White's demand for a preliminary hearing. Thus, the trial court's conclusion that White did not assert his right to a speedy trial until July 6, 2005, is supported by the record. That White waited until that time "`tends to suggest that he either acquiesced in the delays or suffered only minimal prejudice prior to that date. Stevens v. State,418 So.2d 212, 214 (Ala.Cr.App. 1982). Lewis v. State,469 So.2d [1291,] 1294 [(Ala.Crim.App. 1984)]." Vincent v.State, 607 So.2d 1290, 1294 (Ala.Crim.App. 1992).
 D. Prejudice to the Defendant [7,8] "Because `pretrial delay is often both inevitable and wholly justifiable,' Doggett [v. United States], 505 U.S. [647,] 656 [(1992)], the fourth Barker factor examines whether and to what extent the delay has prejudiced the defendant. Barker, 407 U.S. at 532. The United States Supreme Court has recognized three types of harm that may result from depriving a defendant of the right to a speedy trial: `"oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence.' Doggett, 505 U.S. at 654 (quoting Barker, 407 U.S. at 532, and citing Smith v. Hooey, 393 U.S. 374, 377-79 (1969); United States v. Swell, 383 U.S. 116, 120 (1966)). `Of these forms of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" 505 U.S. at 654 (quoting Barker, 407 U.S. at 532)."
Ex parte Walker, 928 So.2d at 267.
After the trial court heard evidence and argument from the prosecution and the defense regarding the motion to dismiss on speedy-trial grounds, the trial court heard evidence regarding a separate motion filed by White challenging the sufficiency of the affidavit and search warrant.[1]
The trial court then conducted an ex parte hearing with the defense on the defense's allegations that White was prejudiced by the delay in bringing the case to trial. At the conclusion of the hearing the trial court dismissed the indictment against White without giving the State any opportunity to rebut the assertions White made during the ex parte hearing.
Although it is clear that a defendant should not be required to divulge prematurely evidence or the intimate aspects of the defense's trial strategy and that ex parte hearings are sometimes necessary so as not to divulge those aspects, seeEx parte Moody, 684 So.2d 114 (Ala. 1996) (allowing for ex parte hearings to determine whether an indigent defendant is entitled to the assistance of an expert witness), this is not the case here. Given the adversarial nature of a speedy-trial claim, an ex parte hearing was inappropriate. Indeed, the applicable caselaw implicitly *Page 904 
recognizes the State's right to rebut allegations of prejudice raised in speedy-trial claims. See Ex parte Walker,928 So.2d at 268, quoting Doggett v. United States,505 U.S. 647, 658 n. 4, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (upon a finding of presumed prejudice, "the burden shifts to the State, which must then affirmatively show that the delay is `extenuated, as by the defendant's acquiescence,' or `that the delay left [the defendant's] ability to defend himself unimpaired.'"); see alsoTexas v. Munoz, (Tex.Ct.Crim.App. 1999) (after the defense has made a prima facie showing of prejudice, the burden shifts to the State to show that there was no considerable prejudice other than that suffered during a normal and inevitable delay).
White's assertion of prejudice that he sought to conceal from the State was the existence of a witness he learned of from discovery in September 2005, but whom he was unable to locate.[2] Although White was not required to disclose the precise nature of the witness's testimony to the State during the hearing, we cannot say that he was entitled to conceal the witness's identity. In order to establish prejudice on the grounds that a witness is no longer available to testify, the defendant is required to identify the witness, rather than making a bare allegation that a witness is no longer available. Indeed, such a bare allegation affords the State no opportunity to rebut the defendant's claim.
In any event, based on the trial court's finding that the delay resulted from the negligence of the prosecution team, rather than an intentional delay in an attempt to disrupt or hinder White's ability to defend against the charges, based on the length of the delay, based on White's delayed assertion of his right to a speedy trial, and based on the trial court's finding of specific prejudice necessitating dismissal of the charges, we conclude that the State should have been afforded the opportunity to respond to the allegations of prejudice.[3]
Based on the foregoing, we remand this case for the trial court to conduct a new hearing on the issue of prejudice, at which time both sides shall have the opportunity to present evidence concerning White's claims that he was prejudiced by the delay in holding his trial. The trial court is instructed to amend its written order, making findings of fact as to each factor of theBarker test, specifically addressing the prejudice factor, then ruling on White's motion to dismiss for lack of a speedy trial. Due return shall be filed with this Court within 56 days of the date of this opinion. The return to remand shall include the trial court's written findings, a transcript of the hearing, and any other evidence received by the trial court.
REMANDED WITH DIRECTIONS.*
McMILLAN, P.J., and COBB, BASCHAB, and SHAW, JJ., concur.
[1] The confidential informant, whose identity was known to White, testified at the evidentiary hearing on the motion to suppress evidence. White had asserted during his argument regarding his motion to dismiss for lack of a speedy trial that one prejudice he suffered from the delay was that he was not able to locate the informant to call him as a witness at trial. When the informant testified at the hearing on the motion to suppress, the trial court instructed the witness that he had to remain in contact with the parties and to remain available to testify should either party desire.
[2] Counsel for White conceded that he knew of the witness before receiving the discovery, but asserted that he learned that she claimed to have been present at one of the transactions only through the discovery provided by the State.
[3] Moreover, we note that the arguments in the record discovery indicate only that the witness was present at one of the two drug transactions. Thus, even if the trial court determines on remand that the charge stemming from that specific transaction is due to be dismissed, the remaining charges may or may not remain intact, depending on the specific findings of the trial court on remand. We simply cannot say from the record that dismissal of all of the charges was proper.
* Note from the reporter of decisions: On September 15, 2006, on return to remand, the Court of Criminal dismissed the appeal, without opinion. On October 20, 2006, that court denied rehearing, without opinion. On March 9, 2007, the Supreme Court denied certiorari review, without opinion (1060177). *Page 905