The appellant, Heikki Tapani Rika, was charged in a four-count indictment with two counts of second degree rape and two counts of incest. All of these charges involved the same victim, the appellant's stepdaughter. At the close of all the evidence, the State nol-prossed the two incest charges. The jury convicted the appellant on the two counts of second degree rape. He was sentenced to ten years' imprisonment on each conviction, to run consecutively, and was ordered to pay court costs and $250 to the Crime Victims' Compensation Fund. Three issues are raised in this appeal.
 I
The appellant contends that the trial transcript is not properly certified.
This case was tried November 2, 1987, before Montgomery Circuit Judge Joseph D. Phelps. Gail Morgan was the official court reporter. Notice of appeal was given at the close of the sentencing hearing held November 17, 1987. Ms. Morgan left the employ of the State in March 1988, and, despite repeated efforts on the part of appellant's counsel,[1] a transcript was not filed *Page 1056 
with this Court until August 8, 1989. This transcript was prepared by Dub Harris, a "roving" court reporter, from Ms. Morgan's audio taperecording and stenographic notes. The certification by Mr. Harris states in pertinent part:
 "THAT I re-wrote TO THE BEST OF MY ABILITY FROM TAPE-RECORDING AND ACTUAL SHORTHAND NOTES, in shorthand, the foregoing proceedings in the foregoing styled cause at the time and place stated heretofore;
 "THAT I later reduced my shorthand notes to computer-aided transcription, and the foregoing pages contain A TRANSCRIPT AS TRUE AND CORRECT AS POSSIBLE of the proceedings and testimony as herein set out."
The appellant contested the transcript prepared by Mr. Harris on the ground that it was improperly certified and argued that the transcript was not accurate and complete. On March 27, 1990, this Court remanded the matter with directions that the trial court conduct an evidentiary hearing "to determine whether a full, true, accurate, and complete transcript of the trial proceedings [could] be created." In accordance with these directions, a series of evidentiary hearings were held over the course of several afternoons.
At the first evidentiary hearing, appellate counsel, Fred Erben, stated that the transcripts of the bond revocation hearing, the voir dire of the jury venire, and the hearing on the motion for new trial were missing. Ms. Morgan subsequently produced the transcripts of the bond revocation hearing and the voir dire of the venire, certifying both as "true, correct and accurate transcription[s] of the official proceedings." Mr. Harris, who actually attended the hearing on the motion for new trial, produced the transcript of that hearing and certified it to be "a full, true and correct transcript of the proceeding and testimony." The appellant raises no question in this appeal regarding any of these three transcripts.
Throughout the course of the evidentiary hearings, appellate counsel Erben maintained that the trial transcript prepared by Mr. Harris was incomplete. Trial counsel, Howard Bryan, was called as a witness at one of the hearings and testified that he thought some evidence was missing from the transcript. When asked to specify this evidence, Bryan stated:
 "It has to do with the abortion clinic. I remember — I can't remember whether we — it has been two and a half years ago. I can't remember whether we let this in by stipulation or whether it was put in by testimony; but that testimony is in my mind because it made such an impression on me at the time."
Bryan remembered that he was shocked to learn that a 15-year-old could walk into an abortion clinic, "lay $225.00 down on a table," and obtain an abortion. On cross-examination by the State, he acknowledged that testimony by the victim as to this information does in fact appear in the transcript prepared by Mr. Harris. Although trial counsel Bryan stated that, in view of the two and one-half year time lapse, he "could not swear that that is a complete record," he could not specify any other matter that was missing from the trial transcript.
The attorney who actually prosecuted this case for the State, Bruce Maddox, testified that, in his best judgment, there were no witnesses, exhibits, or anything of substance missing from the trial transcript. He also stated that, in his best judgment, the transcript was a complete record of what occurred at trial.
Ms. Morgan was called as a witness at several of the evidentiary hearings. She was required by the trial judge to review a copy of the trial transcript prepared by Mr. Harris, and to compare it with her stenographic notes and audio tape, making any necessary corrections. She testified that *Page 1057 
she performed this review and that she corrected this copy of the transcript by retyping some pages and typing corrections on others. Ms. Morgan certified this copy of the trial transcript in writing and from the witness stand. Her written certification, appearing at the end of the transcript, provides, in pertinent part:
 "I, Gail Lovett Morgan, Official Court Reporter for the Fifteenth Judicial Circuit of Alabama, Montgomery, Alabama, (1978-1988) do hereby certify that the foregoing one hundred and sixty-five (165) pages represent a true and correct copy of the testimony and proceedings had and done of Record in the above-styled cause. Said certification was accomplished by reviewing my stenographic notes reported at the time of the above-mentioned proceedings as well as the audio cassette of the proceedings also recorded at that time against the transcript prepared by the Roving Reporter of the Fifteenth Judicial Circuit of Alabama, Mr. Dub Harris, of said proceedings."
Appellate counsel Erben requested that an "expert" court reporter be appointed to review the transcript at the expense of the State. This request was granted and Patricia Starkie was appointed to perform this review. Ms. Starkie testified that she compared 79 pages of the transcript as corrected by Ms. Morgan against both the audio tape and Ms. Morgan's stenographic notes. She characterized the differences between the stenographic notes and the transcript as "moderate to severe," and the differences between the audio tape and the transcript as "probably slight." At the trial judge's direction, Ms. Starkie compared the entire transcript as corrected by Ms. Morgan against the audio tape and marked the differences in red ink on the transcript. Ms. Starkie also produced a transcript from the stenographic notes. Both of these transcripts are a part of the record before this Court.
Ms. Starkie also prepared a written report of her activities in this case. In this report, she enumerated five places in which the audio tape was inaudible and provided the corresponding page, line, and testimony from the transcript. Ms. Starkie concluded her report with the following statement: "After a very careful review of the material furnished by the court, it is my professional opinion that the attached transcript, with corrections noted, is a full, true, accurate, and complete transcript of the trial proceedings to the best of my ability."
After the evidentiary hearings were concluded, the trial judge entered an order summarizing the actions taken in response to the directions of this Court. That order, dated July 5, 1990, concludes:
 "This court, which was the Court which tried the Defendant and heard all motions, has carefully reviewed the transcript attached to Ms. Starkie's written report and has carefully reviewed all of the evidence presented at the four (4) evidentiary hearings. This court has worked with all parties involved to determine whether a true, full, accurate and complete transcript of the trial proceedings has been created. The Court has reviewed the documents, the comparison notes from the Court Appointed Expert [Ms. Starkie], as well as the transcript itself. The Court concludes and finds that a full, true, accurate and complete transcript of the trial proceedings in the case of [the appellant] has in fact been created. The Court finds that the transcript as attached to the report of the Court Appointed Expert does in fact disclose what occurred in the trial of [the appellant]. The Court finds that any and all differences heretofore existing as to whether the record truly discloses what occurred at the trial of [the appellant] have now in fact been settled by virtue of the transcript as attached to the report of the Court Appointed Expert and that a record has been made which conforms to the truth."
The appellant relies heavily on Pope v. State, 345 So.2d 1382
(Ala.Cr.App. 1976), to support his position that the trial transcript was not properly certified. In Pope, the transcript was apparently produced by a third party under the direction of the court reporter who actually attended the trial. The court reporter certified the transcript *Page 1058 
to be " 'a full, true and correct transcript of the testimony and proceedings as set out to the best of my ability.' " 345 So.2d at 1384 (emphasis in original). This Court held that this certification was inadequate, as "the certificate should be worded in unequivocal terms."[2] Id. at 1385 (footnote added). See also App. 1, Form 5, A.R.App.P. We also held that having the court reporter amend the certificate to state that the transcript was correct was not an appropriate remedy because that "would not, by magic, correct errors and omissions which may exist in the transcript." Id. We therefore concluded that the appellant was due a new trial.
However, the Alabama Supreme Court reversed this Court's decision, holding that we had erred in remanding the matter for a new trial. Pope v. State, 345 So.2d 1385 (Ala. 1976). The Supreme Court stated that the proper remedy[3] was for this Court to "compel the preparation of a correct transcript or [to] allow the defendant time to prepare a succinct statement of the evidence in lieu of a transcript." 345 So.2d at 1387. That Court also made it clear that it is the duty of both indigent and nonindigent criminal defendants "to see that a transcript . . . contains a proper certificate." Id.
In this case, the appellant contested the certification by Mr. Harris and this Court remanded the cause to the trial court for a determination of whether "a full, true, accurate, and complete transcript of the trial proceedings [could] be created." This procedure was clearly in line with the Alabama Supreme Court's decision in Pope. As this Court noted after remand by the Supreme Court in Pope, "[t]he trial court is the proper forum to determine whether or not it is possible to provide an accurate transcript or statement in lieu of a transcript." Pope v. State, 345 So.2d 1388, 1390
(Ala.Cr.App. 1976). Cf. Rule 10(f), A.R.App.P. ("If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth"). After several evidentiary hearings, the trial court determined that the transcript as corrected by Ms. Morgan and then Ms. Starkie is a "full, true, accurate and complete transcript of the trial proceedings." This "determination is conclusive absent extraordinary circumstances." State v.Causby, 706 S.W.2d 628, 633 (Tenn. 1986).
In this case, we find no "extraordinary circumstances" that would undermine the trial court's determination that the transcript is "full, true, accurate and complete." In fact, the record on remand clearly demonstrates that his determination is correct. Ms. Morgan reviewed the transcript prepared by Mr. Harris against her stenographic notes and audio tape and, after making certain corrections, certified the transcript as "true and correct." At the appellant's specific request, yet another court reporter, Ms. Starkie, compared the transcript certified by Ms. Morgan to Ms. Morgan's notes and tape. While the corrections noted in red by Ms. Starkie are fairly numerous, they are not of any real significance. Nor do the inaudible portions of the tape, which were apparently very brief, appear to have contained anything of significance. We note that "[a] 'record of *Page 1059 
sufficient completeness' [for adequate and effective appellate review] does not translate automatically into a complete verbatim transcript." Mayer v. City of Chicago, 404 U.S. 189,194, 92 S.Ct. 410, 414, 30 L.Ed.2d 372 (1971). Moreover, having requested that Ms. Starkie review the transcript, the appellant can hardly be heard to now complain that this review was inadequate to produce an acceptable transcript. See Phillips v.State, 527 So.2d 154, 156 (Ala. 1988); Lochli v. State,565 So.2d 294, 299 (Ala.Cr.App. 1990).
This is not a case in which a transcript is simply unobtainable, compare Harris v. State, 552 So.2d 866
(Ala.Cr.App. 1989), or cannot be feasibly obtained, compare Exparte Steen, 431 So.2d 1385 (Ala. 1983). A transcript of the appellant's trial has been prepared and was ultimately reviewed and certified as "true and correct" by Ms. Morgan, the very court reporter who attended the trial. In view of the effort and time expended by the persons involved in the proceedings on remand, we have no doubt that what was on Ms. Morgan's audio tape has been correctly reproduced in the transcript now before this Court.
The appellant's contention that the trial transcript is incomplete is unsupported by any evidence. The burden was on the appellant to establish that the trial transcript is incomplete, i.e., that something in fact occurred at trial, but does not appear in the transcript thereof. See Pope,345 So.2d at 1387 (Ala.); Owen v. State, 776 S.W.2d 467, 469 (Mo.App. 1989) ("a party complaining about the adequacy of a transcript must specifically show how he is prejudiced by the inadequacy of the transcript before he is entitled to any relief").
The appellant clearly had ample opportunity at the evidentiary hearings to produce evidence to support his claim of incompleteness. However, the only evidence offered on this point by the appellant was the testimony of trial counsel Bryan, who testified that certain evidence was missing from the transcript, but who then acknowledged that the victim's testimony contained the very information that he thought was missing. The appellant offered no other evidence to demonstrate that the trial transcript is somehow deficient.
Moreover, the prosecuting attorney testified that nothing was missing from the transcript. The trial judge before whom this case was tried has entered a written order stating that he has reviewed the transcript and that he finds it to be "full, true, accurate and complete." There have been no allegations or proof that Ms. Morgan was incapable of accurately reporting the proceedings at the time of the trial. See State v. Thomas,513 So.2d 377, 379 (La.App. 1987). Under the peculiar circumstances of this case, we accept the trial judge's determination that the transcript as corrected by Ms. Morgan and Ms. Starkie is "full, true, accurate and complete," and we deem this transcript to be the appropriate transcript for our review in this appeal.
This Court finds it "deplorable that [almost] two years elapsed before an official transcript was forthcoming,"Mitchell v. Wyrick, 698 F.2d 940, 942 (8th Cir.), cert. denied,462 U.S. 1135, 103 S.Ct. 3120, 77 L.Ed.2d 1373 (1983), and we sympathize with the appellant, who is in the unenviable position of attempting to contest this transcript after time has eroded the memories of the participants. Appellate counsel Erben, who was not trial counsel, is to be commended for the zeal and intensity with which he has pursued this issue on behalf of the appellant. Nevertheless, without a demonstration that something is, in fact, missing from the trial transcript, we can only conclude that the transcript is complete. See Statev. Osborne, 49 Ohio St.2d 135, 141, 359 N.E.2d 78, 84 (1976), vacated on other grounds, 438 U.S. 911, 98 S.Ct. 3136,57 L.Ed.2d 1155 (1978); State v. Findley, 39 Ohio App.2d 166, 170,317 N.E.2d 219, 222-23 (1973).
 II
The appellant asserts that his conviction must be reversed because an exhibit that was not introduced into evidence was sent to the jury room with the jury during its deliberations.
The item in question is a copy of the victim's medical records from the clinic *Page 1060 
where she obtained an abortion. These records bear a "State's Exhibit # 1" sticker and were sent to this Court in an envelope to which was affixed the following certification by the circuit court clerk: "I hereby certify that the exhibits contained in the attached envelope are the original exhibits introduced inevidence in the trial of the above cause." (Emphasis added.)
The trial transcript tends to refute this certification, for there is neither an identification of nor an offering into evidence of State's Exhibit 1. We note that the State had two other documentary exhibits that were clearly identified and offered for admission during the trial. The only reference to State's Exhibit 1 contained in the trial transcript occurred during the prosecutor's cross-examination of the appellant and it is abundantly clear from the context of the question and answer that this was merely a misstatement by the prosecutor. The prosecutor stated, "I am going to show you State's Exhibit number one and I'll show you page four and ask you to read that question right here (indicating) and the answer. Read it aloud for the jury, please, sir." (Emphasis added.) The appellant's response was, verbatim, a question and answer from page four of State's Exhibit 3, the statement given by the appellant on March 20, 1987.
The medical reports were discussed at the evidentiary hearings described in Part I of this opinion. Mr. Bruce Maddox, who prosecuted this case for the State, testified that he did not remember State's Exhibit 1 being introduced into evidence at the trial. Mr. Maddox stated that he thought he had "premarked" the exhibits prior to the actual trial and that he "intended to offer [State's Exhibit 1] into evidence, should it become necessary, to impeach the defendant with that information in his testimony; however, [the defendant] freely admitted that he took [the victim] to get the abortion. . . . I felt at that point [the defendant] had sufficiently established what I wanted at that time and I didn't need the document." Appellant's trial counsel, Howard Bryan, testified that he could not remember anything about the medical reports from the trial. Neither the appellant nor the State presented any evidence as to whether this exhibit was actually seen by the jury.
Clearly, items which have not been properly introduced into evidence should not be considered by the jury during deliberations. See Ex parte Troha, 462 So.2d 953, 954 (Ala. 1984); Gilliland v. State, 266 Ala. 24, 25-26, 93 So.2d 745,746 (1957). However, even if we accept the appellant's assertion that this exhibit was actually sent to the jury room with the jury when it began deliberating, this was, at most, harmless error.
The victim testified that the appellant had had sexual intercourse with her on at least four occasions and that she twice became pregnant as a result thereof. The first time she became pregnant, she carried the child to term and gave it up for adoption. The victim stated that the second time she became pregnant, the appellant "told [her] to make arrangements for an abortion," gave her $225 for the abortion, and transported her to a local clinic where she in fact had an abortion. There wasno objection by the appellant to any of this testimony. Later, the appellant testified in his own behalf and, although he denied ever having sex with the victim, he admitted that he gave the victim money, which he understood she was going to use to procure an abortion, and that he drove her to the shopping center where the clinic was located.
We have carefully reviewed the seven pages of medical records contained in State's Exhibit 1. Although there is extraneous information contained in those records, we are satisfied that there is nothing therein which would have unduly prejudiced the appellant. The damaging information in the records is that the victim had an abortion and both the victim and the appellant testified to that fact before the jury. In view of this testimony, we fail to see how the appellant could have been prejudiced by the jury's viewing the medical records, if in fact it did so. See Rule 45, A.R.App.P.; Humber v. State,
 *Page 1061 19 Ala. App. 451, 456, 99 So. 68, 73 (1923), cert. denied, 210 Ala. 559,99 So. 73 (1924).
Moreover, before the jury retired to begin deliberating, the trial court stated, "[Y]ou lawyers be sure that the exhibits that were admitted go back there and that nothing that was notadmitted goes back there." (Emphasis added.) Presumably, the appellant's trial counsel followed this directive. As we stated in Merriweather v. State, 364 So.2d 374, 377 (Ala.Cr.App.), cert. denied, 364 So.2d 377 (Ala. 1978):
 "A determination of what documents or other material should go to the jury room for consideration by the jury during deliberations is the responsibility of the trial judge, but the attorneys for the parties, the court reporter, the acting clerk and the bailiff, in degrees varying with the circumstances, share responsibility for bringing to the attention of the trial court any question as to whether particular documents or other material should go to the jury room. We do not find any blameworthy conduct on the part of any particular person in connection with the taking of the [medical records] to the jury room, but when the one complaining is no less responsible therefor than the others, his complaint is ordinarily not well taken."
 III
The issue of whether the appellant's inculpatory statement was involuntary, and therefore inadmissible, was not preserved for our review. The State introduced this statement through the testimony of Corporal Lois Caffey of the Montgomery Police Department. The only objections to the statement at the time it was offered was that "[t]here is an hour in this statement that is not accounted for" and that the statement "is an incomplete statement because it does not contain all that transpired." There was no allegation whatsoever at trial that the statement was involuntary, nor was there any request for a hearing outside the presence of the jury on this matter.[4] Compare Smithv. State, 554 So.2d 451, 452 (Ala. 1989).
It is well settled that "[t]he statement of specific grounds of objection waives all grounds not specified and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987). Accord,Harrison v. State, 560 So.2d 1124, 1127 (Ala.Cr.App. 1989);Chisler v. State, 553 So.2d 654, 660 (Ala.Cr.App. 1989). "[E]ven constitutional rights have to be seasonably raised in the trial court before they will be considered by this Court." Block v.State, 455 So.2d 1011, 1012 (Ala.Cr.App. 1984). Accord, Johnsonv. State, 480 So.2d 14, 17 (Ala.Cr.App. 1985). This issue simply was not preserved for appellate review.
For the reasons stated above, the judgment of the Montgomery Circuit Court is affirmed.
AFFIRMED.
All Judges concur.
[1] By check dated March 22, 1988, appellate counsel paid Ms. Morgan $750 for the preparation of this transcript. After several extensions of time to file the transcript were obtained by Ms. Morgan, appellate counsel filed a motion to compel the production of the transcript. This motion was granted by the trial judge on December 16, 1988, and Ms. Morgan was ordered to file the transcript no later than December 27, 1988. Ms. Morgan failed to comply with this order and appellate counsel subsequently filed a motion for contempt, which was granted by the trial court on March 24, 1989. On August 1, 1989, appellate counsel filed in this Court a motion to reverse and remand due to the fact that no transcript had been filed. The transcript prepared by Mr. Harris was filed a week later, at which time this Court dismissed the appellant's motion as moot.
We note that Ms. Morgan did not produce a transcript in four other appeals previously before this Court. On April 23, 1991, Judge Phelps granted new trials in three of those cases.Ahart v. State, 586 So.2d 297; Boswell v. City of Montgomery, 586 So.2d 298; Davis v. State, 58 So.2d 300. In the fourth case, the denial of a petition for error coram nobis, a new hearing was granted. Lee v. State, 586 So.2d 305.
[2] It would appear that this holding was limited to situations where the court reporter who attended the proceeding or someone under his supervision prepared the transcript. See Pope, 345 So.2d at 1384 ("Where the certificate of the court reporter shows his stenographic notes to have been transcribed into transcript form by someone else, albeit under his supervision and control, this Court and the appellant are entitled to an unqualified affirmation that the transcript is a full, true and complete record of the testimony"). We were not called on inPope, nor are we called on in this case, to ascertain whether a certification "to the best of my ability" is sufficient in cases where the original court reporter has died, left the jurisdiction, or is otherwise unable or unavailable to produce a transcript and a second court reporter produces the transcript from the original court reporter's notes and tapes. Compare Owen v. State, 776 S.W.2d 467, 469 (Mo.App. 1989).
[3] Pope also involved the question of whether the appellant was at fault in the late filing of the transcript, which the Supreme Court held must be answered in the negative before the matter of a remedy could be addressed. 345 So.2d at 1387. That question is not involved in the case at bar.
[4] Further, there has been no allegation that an objection on this ground or a motion for a voluntariness hearing wasactually made, but does not appear in the trial transcript. See Part I, above.