JAMES H. FAULKNER, Retired Justice.
Ricky Germany was indicted for the offense of trafficking in cocaine, in violation of § 13A-12-231, Code of Alabama 1975. The jury found Germany guilty as charged in the indictment, and he was sentenced as an habitual felony offender to life imprisonment. Two issues are raised on appeal.
*429 I
Germany contends that the evidence was insufficient to sustain his conviction for trafficking in cocaine because, he says, the State did not prove that he constructively possessed the 75.37 grams of cocaine found in the kitchen of his business.
When the police officers searched the premises known as “Crab’s and Janice’s Lounge” pursuant to a search warrant, five persons were present on the premises. Four persons were seated at a bar in the front of the lounge, and Germany, who was alone in the kitchen, was coming out of the kitchen as the police were coming in. On a chair inside the kitchen was a paper bag containing cocaine and a set of measuring scales. Because Germany was not in exclusive control of the premises and because no contraband was found on his person, the State had to establish that Germany was in constructive possession of the cocaine in order to sustain his conviction for trafficking in cocaine.
To establish possession, the State must prove: 1) actual or potential control, 2) intention to exercise dominion, and 3) an external manifestation of intent and control. Eady v. State, 495 So.2d 1161 (Ala.Cr.App.1986). “Where constructive possession is relied on the State must also prove beyond a reasonable doubt that the accused knew of the presence of the prohibited substance.” Temple v. State, 366 So.2d 740, 741 (Ala.Cr.App.1978). The accused’s knowledge of the presence of the controlled substance may be proved by “his declarations, or admissions, and contradictory statements, and explanations made by him.” Cason v. State, 435 So.2d 200, 202 (Ala.Cr.App.1983) (quoting 28 C.J.S.Supp., Drugs & Narcotics, § 204 (1974)).
Where illegal substances are found on premises under the control of the defendant, an inference may arise that the defendant had knowledge and possession of such drugs. Self v. State, 564 So.2d 1023 (Ala.Cr.App.1989), cert, quashed, 564 So.2d 1035 (Ala.1990). A defendant’s mere presence in the building where an illegal substance was found will not, however, support a conviction for possession of a controlled substance unless the State introduces other evidence supporting the defendant’s possession, and the types of circumstantial evidence necessary to show the possession will vary with each case. Perry v. State, 534 So.2d 1126 (Ala.Cr.App.1988).
The State offered the following circumstantial evidence of Germany’s constructive possession of the cocaine: Germany admitted that he was the owner and operator of the club; Germany admitted being in the club when the club was searched and the cocaine was found; and Germany admitted that he was the only person in the proximity of the kitchen where the cocaine was found. A crack pipe was also found in the kitchen. According to the police officers who executed the search warrant, Germany was alone in the kitchen when the police entered the premises, and Germany was coming out of the kitchen as the police were coming in.
Perhaps the most damaging evidence showing constructive possession is contained in the following testimony of arresting officer Sgt. Oladeinde who took a statement from Germany after he was arrested and Mirandized and after he had indicated that he understood his rights and that he wanted to waive them:
“Q. What was the statement that he made?
“A. Mr. Germany stated that it was not his. It belonged to Skinner. That he was going to make Skinner claim the dope.
“Q. Let me backtrack. What were you talking about at the time?
“A. We were talking about the controlled substance that we seized.
[[Image here]]
“Q. After he made the statement that it belonged to Skinner and he would make Skinner claim it, what else was said?
“A. He asked me if I left him a little bit.
“Q. What did you reply?
“A. I replied I left all your food.
“Q. After you made that statement what did he say?
*430 “A. He said no, not that. You know what I mean.
“Q. Did he say anything else?
“A. No, sir. I told him I took it all.”
Germany’s statement was also heard by Officer Fields, who testified that she heard Germany say that he was going to make Skinner claim the cocaine. Fields further testified that she heard Germany ask Olad-einde if they “left him some” and that she knew that he was referring to cocaine, and not to the food in the kitchen.
Although Germany claimed that the cocaine belonged to Skinner, his testimony merely created a question for the jury. Shaneyfelt v. State, 494 So.2d 804 (Ala.Cr.App.1986). Hence, because the State clearly presented sufficient evidence of Germany’s constructive possession of the cocaine, and because the question of Germany's guilt or innocence was one for the jury, his motion for judgment of acquittal was properly denied.
II
Germany contends that the trial court erred in limiting his cross-examination of a State’s rebuttal witness.
Germany introduced the testimony of two Birmingham police officers, Captain Julius Walker and Captain R.L. Webb, who both testified that State’s witness, Sgt. Oladeinde, had a bad reputation for truth and veracity and that neither would believe her testimony under oath. As discussed supra, Oladeinde testified as to the particulars of Germany’s statement to the police.
The State attempted to bolster the Olad-einde’s credibility through the rebuttal testimony of Officer Jimmy L. Wesson, who testified that Oladeinde had a good reputation in the police community and that he would believe her under oath. During Germany’s cross-examination of Officer Wesson, the following exchange took place:
“Q. Have you heard that she was accused of stealing $2,056.00—
“MR. BOWERS: We object.
“(Jury out)
“THE COURT: What’s the objection?
“MR. BOWERS: I object to him going into specific instances of conduct regarding Sergeant Oladeinde.
“THE COURT: Do you have any authority on that?
“MR. APPELL: I’m looking it up right now.
“THE COURT: I think certain things he can ask.
“MR. APPELL: Section 226-02, Subsection 17. I think 26-02-14.
“THE COURT: I think he could. McElroy 26.02-14. ‘Witness testifies to another’s good general reputation only with respect to truth and veracity for the purpose of supporting such other’s credibility as a witness; the witness may be asked on cross-examination whether he at any time heard rumors derogatory to such other’s truth and veracity. However, such a witness may not be asked whether he has heard rumors which are not relevant to such specific trait.’
“We are talking about truth and veracity. That is what he did testify to. He’s saying there is a rumor that she stole $2,056.00. What else do you have in mind?
“MR. APPELL: Also, have you heard Sergeant Oladeinde was never able to satisfactorily explain to the city auditors what happened to the $2,056.00?
“THE COURT: No, I won’t hear that.
“MR. APPELL: Also, if he heard that she failed two separate polygraph examinations?
“THE COURT: No, I won’t allow that. You’re getting into the truth. You’re getting into the truth of the rumor. That’s for another tribunal to decide. You can ask — you asked is there a rumor that she took $2,056.00. I will rule you out on whether or not she satisfied somebody and something with the polygraph test being the same. What else?
“MR. APPELL: I want to make it clear for the record that you are instructing me in limine not to ask those questions.
*431 “THE COURT: Sure. I’m overruling you.
“MR. APPELL: We would object.
“THE COURT: You don’t object. You might take exception. You don’t object to what I do.
“MR. APPELL: I take exception.
“THE COURT: Very well.
“(Jury present)
“Q. (By Mr. Appell) Officer Wesson, have you heard that Sergeant Oladeinde was accused of stealing $2,056.00 from the City of Birmingham?
“A. I had not heard that.
“Q. You had not heard that?
“A. No.
“Q. If you had heard that would that change your opinion of her, of her reputation for truth and veracity?
“A. No, it would not.
“Q. It would not?
“A. No.”
The scope of cross-examination of a witness who testifies to another’s good general reputation only with respect to truth and veracity is discussed in C. Gamble, McEl-roy’s Alabama Evidence § 176.01(10) (4th ed. 1991):
“If a witness testifies to another’s good general reputation only with respect to truth and veracity, the witness may be asked on cross-examination whether he has heard rumors derogatory to such other if, but only if, the rumors inquired about are relevant to the trait of truth and veracity. Thus, a witness who has testified only to another’s good general reputation for truth and veracity may not be asked on cross-examination whether he has heard that such other had gotten drunk and played cards. This could not be asked on cross-examination because getting drunk and playing cards are without relevancy to one’s character for truth and veracity.”
The limit to which a character witness can be cross-examined is largely within the discretion of the trial court. Johnson v. State, 260 Ala. 276, 69 So.2d 854 (1954).
Officer Wesson testified on direct examination that Sergeant Oladeinde had a very good reputation for truth and veracity. On cross-examination Germany was allowed to ask Wesson if he had heard that Oladeinde had been accused of theft. Because the rumor that Oladeinde had been accused of theft was relevant to the trait of truth and veracity, the trial court properly ruled that Germany be allowed to ask Wesson whether he had heard of that rumor. When, however, Wesson denied knowledge of the rumor, Germany could not attempt to “prove” the rumor by asking Wesson 1) whether Wesson had heard that Oladeinde was never able to satisfactorily explain to the City auditors what happened to the $2,056 and 2) whether Wesson had heard that Oladeinde failed two separate polygraph examinations.
The two proffered questions were not relevant to the issue of Oladeinde’s reputation for truth and veracity and were properly excluded by the trial court as a collateral attempt to “prove” the rumor concerning the alleged theft. Wedgeworth v. State, 450 So.2d 195 (Ala.Cr.App.1984), Etheridge v. State, 414 So.2d 157 (Ala.Cr.App.1982).
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.