The appellant, Richard Patrick Long, was convicted after a jury trial of trafficking in marijuana (CC-91-1582, -1583, and -1585), in violation of § 13A-12-231(1)(a) (b), trafficking in cocaine (CC-91-1586), in violation of § 13A-12-231(2)(a), and using his public office for personal gain (CC-91-1584), in violation of § 36-25-5, Code of Alabama 1975. He was sentenced to 10 years' imprisonment in each of the marijuana and cocaine trafficking cases and to 5 years' imprisonment in the ethics case, with all sentences to run concurrently. He raises six issues on appeal.
 I
The appellant argues that the trial court erred by ruling that he failed to prove a prima facie case of discrimination pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), and by not requiring the state to provide reasons for its strikes. The record reflects that the venire was composed of 23 white and 9 black venirepersons. The state exercised 5 of its 10 strikes to remove blacks. The jury was composed of 9 whites and 3 blacks. One white and one black served as alternates. Thus, blacks represented 28% of the venirepersons and 25% of the jurors.
The appellant contends that the standard of review for aBatson claim is whether the trial court abused its discretion. He is incorrect — the proper standard of review is whether the trial court's ruling was clearly erroneous. Ex parte Branch,526 So.2d 609, 625-26 (Ala. 1987). The appellant argues that because the state removed 55.5% of the blacks and only 21.7% of the whites from the venire, he proved a *Page 116 
prima facie case of discrimination. This contention is without merit because the percentage of venirepersons struck will usually be lower when the state exercises strikes against the majority race of the venirepersons than against the minority race of the venirepersons. Batson simply does not dictate that the state exercise its strikes of venirepersons in percentages based on the percentage on the venire of venirepersons of a particular race. The appellant also contends that the state did not engage in any meaningful voir dire. However, he did not make this argument at trial; therefore, we will not consider this issue on appeal. Rika v. State, 587 So.2d 1054
(Ala.Cr.App. 1991).
The Alabama Supreme Court has held: "When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than on the lawfully established venire, an inference of discrimination has not been created."Harrell v. State, 571 So.2d 1270, 1271 (Ala. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991). This holding may be logically extended in cases such as this one, in which the percentage of blacks on the venire and on the jury is only slightly different — in this case, only 3%. The racial composition of the jury roughly mirrored the racial composition of the venire; therefore, we cannot say that the trial court's ruling was clearly erroneous.
 II
The appellant argues that the trial court abused its discretion by admitting evidence of his alleged past use of cocaine. The state offered, over objection, testimony of Shane Stokes, the informant in this case, to the effect that the appellant used cocaine with him on an occasion two and one-half years before the instant offenses. The trial court ruled that that evidence was admissible as evidence of a predisposition to commit the offense to rebut the appellant's defense of entrapment.
As a general rule, evidence of collateral offenses is inadmissible. C. Gamble, McElroy's Alabama Evidence § 60.01(1) (4th ed. 1991). This rule, however, is subject to exceptions. See McElroy's §§ 69.01(2)-(14). "[I]f there is a close question of whether [a] prior crime falls into one of these exceptions, then admissibility is, to some extent, within the discretion of the trial court." Id. at § 60.02(1) (footnote omitted).
As previously noted, the appellant offered the defense of entrapment.
 "Special pleas and defenses are available which, when asserted by the accused, place all or a limited portion of his character in issue. The materiality of such character permits the prosecution to introduce any other criminal acts which are relevant to prove it. A major illustration of this principle is found in criminal prosecutions where the accused invokes the defense of entrapment. The use of such a defense has been held to place in issue the defendant's predisposition to commit the charged crime. This permits the prosecution to offer prior crimes by the accused to rebut such a special defense. By having pleaded the defense of entrapment, the accused has been held to have placed in issue his predisposition, or lack thereof, to commit the crime and evidence of collateral crimes is admissible to rebut such a defense and to illustrate, at the time of the commission of the offense, the accused's intent."
Id. at § 69.01(13) (footnotes omitted). This exception may be used to admit evidence of other instances of the unlawful distribution of illegal drugs when a defendant pleads entrapment in an unlawful distribution or trafficking case.See, e.g., Brown v. State, 392 So.2d 1248 (Ala.Cr.App. 1980), writ denied, 392 So.2d 1266 (Ala. 1991). However, we find no Alabama cases in which evidence of alleged drug use has been admitted to rebut a defense of entrapment in a prosecution fortrafficking.
The North Carolina Court of Appeals, in State v. Goldman,97 N.C. App. 589, 389 S.E.2d 281 (1990), review denied,327 N.C. 434, 395 S.E.2d 691 (1990), held that evidence of an appellant's previous cocaine and lysergic acid diethylamide (LSD) use was admissible in a prosecution for "possessing [LSD] and cocaine with intent to *Page 117 
sell and deliver, selling and delivering LSD and cocaine and trafficking in LSD."[1] 97 N.C. App. at 591, 389 S.E.2d at 282. In reaching its decision, the Goldman court stated the following:
 "G.S. sec. 8C-1, Rule 404(b) provides that evidence of other wrongs is admissible to prove absence of entrapment. We view personal use of drugs as not being synonymous with the intent to sell, distribute or traffic drugs. However, we find no error with the trial court's decision to admit evidence of defendant's prior drug use to show his predisposition to commit the crimes charged."
97 N.C. App. at 595, 389 S.E.2d at 284. Compare N.C.Gen. Stat. § 8C-1, Rule 404(b) (1986) with McElroy's at § 69.01(1)-(13).[2]
We find Goldman applicable to the instant case and hold that testimony regarding the appellant's alleged previous cocaine use was admissible to show his predisposition to commit the offense of trafficking in marijuana and cocaine.
The appellant also argues that the alleged previous cocaine use was too remote from the instant offenses to be admissible. The determination of whether a collateral offense is too remote is a matter within the trial court's discretion.McElroy's at § 69.02(6). We conclude that two and one-half years is not too remote; therefore, the trial court did not abuse its discretion by admitting evidence of the appellant's alleged prior cocaine use.
 III
The appellant argues that the trial court erred by limiting his cross-examination of Shane Stokes concerning threats allegedly made by the appellant against him. At trial, on redirect examination of the Shane Stokes, the following occurred:
 "Q [Prosecutor]: You were asked questions — First of all, about this execution stuff that they asked you about, did you ever tell anybody or mention anything about somebody talking to you about somebody being executed?
 "A [Stokes]: I told T.L. Payne [investigator] when he started bringing up the name of my fiancee that I did not appreciate it because my uncle, who was a deputy sheriff, and lived in South Florida and is now residing in Mississippi, had told me what happens many times to the family and to people who inform themselves; and I've already received mail threats in this case from Mr. Long's friends.
 "MR. HAWTHORNE [Defense counsel]: Your Honor, I'm going to object and move to exclude that. There is absolutely no evidence as to that. I am going to ask for a mistrial.
"MR. GRADDICK [Prosecutor]: He brought it up.
"THE COURT: Overruled."
On recross-examination, the appellant sought the names of those who had allegedly threatened Stokes. He then sought the identity of the person who had relayed the information to Stokes that threats had been made. The state objected and contended that this informant should remain anonymous because the district attorney's office was conducting an ongoing investigation. The trial court allowed the appellant to ask who had threatened Stokes, but not who had relayed the information concerning the threats to him, and repeatedly refused to allow the appellant to cross-examine Stokes regarding the informant's identity.
 "It is well recognized that the prosecution has the privilege to withhold the identification or production of persons who furnish information to law enforcement officers. See Roviaro v. United *Page 118 
 States, 353 U.S. 53 [77 S.Ct. 623, 1 L.Ed.2d 639] . . . (1957. See generally United States v. Herrero, 893 F.2d 1512, 1525 (7th Cir.), cert. denied, [496] U.S. [927], 110 S.Ct. 2623 [110 L.Ed.2d 644] . . . (1990). However, this privilege is not absolute. 'Where the disclosure of an informer's identification, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.' Roviaro, 353 U.S. at 60-61 [77 S.Ct. at 628] . . . (emphasis added [in Berry)." . . .
 "While the prosecution's privilege to withhold an informant's identity may be defeated, 'the burden is on the defendant to demonstrate the need for the disclosure.' United States v. Fixen, 780 F.2d 1434, 1439 (9th Cir. 1986), quoted in Lightfoot v. State, 531 So.2d 57, 59 (Ala.Cr.App. 1988)."
Berry v. State, 581 So.2d 1269, 1273 (Ala.Cr.App. 1991). Furthermore, the scope of cross-examination, whether on matters relevant or irrelevant, rests with the trial court and its exercise of its discretion will not be disturbed absent "extreme cases of abuse," Beavers v. State, 565 So.2d 688, 689
(Ala.Cr.App. 1990).
The appellant contends that the allegations of threats by him were prejudicial and that the trial court's limiting his cross-examination impeded his ability to test Stokes' veracity regarding this information, and that therefore, he should have been allowed to elicit the name of the informant. This issue, however, is without merit. First, the appellant did not adequately demonstrate the need for determining the informant's identity. The appellant testified, and he could have refuted Stokes' testimony that he had threatened him, but he did not. Furthermore, Stokes identified the other individuals who allegedly threatened him, both of whom were present at trial and one of whom testified. The appellant could have had both these individuals testify and refute Stokes' statement or he could have possibly determined through these witnesses who the informant was. Second, the threats were, at best, a peripheral issue, and the trial court did not abuse its discretion by disallowing the evidence. Thus, this issue is without merit.
 IV
The appellant argues that the trial court erred by denying his motion for a judgment of acquittal and motion for new trial because the state failed to prove a prima facie case of trafficking in marijuana and trafficking in cocaine. At trial, the state's evidence tended to show the following facts: The state's informant, Shane Stokes knew the appellant in high school. Stokes had seen the appellant at a party some two and one-half years before the offenses alleged in the instant case and shared some cocaine with him. At the time, the appellant offered to be a "mule" or drug courier for Stokes. Stokes told the appellant that he did not need a "mule." Stokes knew that the appellant was an officer with the Montgomery Police Department. He later saw the appellant at a bank, where he was apparently working another job as a security guard in addition to working as a police officer. The appellant indicated to Stokes that he needed to make some money very quickly and asked if he knew how he could. They exchanged telephone numbers. Stokes did not call the appellant; the appellant called Stokes. Stokes subsequently contacted the Alabama Department of Public Safety with this information and a "reverse" sting operation was planned.
On May 8, 1991, Norman Willingham, a narcotics agent with the Alabama Department of Public Safety, met the appellant at a bank in Montgomery. Shane Stokes handed some money to Willingham to purchase marijuana in Mobile. The appellant got in Willingham's car and they left for Mobile. On the way to Mobile, the appellant asked what they were going to pick up. Willingham told him that they were going to pick up marijuana. In Mobile, they met John Pigot, an agent with the United States Drug Enforcement Agency (DEA). Willingham gave Pigot the money Stokes had given him and put a bale of marijuana in the trunk of his car. On the *Page 119 
return trip to Montgomery, the appellant asked how much marijuana they had purchased, and Willingham replied that it was 40 pounds. The appellant was paid $250 for this trip.
On May 17, 1991, Willingham met the appellant at the same bank. On this trip, they were taking approximately 100 pounds of marijuana to Birmingham. Willingham intentionally left some of the marijuana in view in the hatchback of the car so the appellant would see it. The appellant told Willingham that he saw some marijuana bricks sticking out of the duffel bags. Willingham told the appellant to conceal the marijuana better, and he complied. On the trip to Birmingham, the appellant made a statement to the effect that if they were caught in possession of the marijuana, he could be imprisoned for 20 years. In Birmingham, they delivered the marijuana to Bill Batson, a DEA agent. The appellant loaded the marijuana into Batson's car. The appellant was paid $250 for his participation and they returned to Montgomery.
On May 30, 1991, Willingham again met the appellant at a bank. On this trip to Birmingham, they were to deliver 140 pounds of marijuana and 1 pound of cocaine. Again they delivered the drugs to Birmingham, and the appellant loaded them into another vehicle. They returned to Montgomery. The appellant was paid $500 for this trip.
In each case, the evidence showed that the appellant knew the purpose of the trip. The evidence also shows that the appellant either handled or saw the drugs each time and was aware of the quantity. According to the state's witnesses, the appellant never indicated that he no longer wanted to participate in these drug deliveries.
When reviewing the denial of a motion for a judgment of acquittal, we view the evidence in a light most favorable to the state. See Colvette v. State, 568 So.2d 319, 321
(Ala.Cr.App. 1990). At trial, the state was attempting to prove that the appellant had constructive possession of the marijuana and the cocaine.
 "To establish possession, the State must prove: 1) actual or potential control, 2) intention to exercise dominion, and 3) an external manifestation of intent and control. Eady v. State, 495 So.2d 1161 (Ala.Cr.App. 1986). 'Where constructive possession is relied on the State must also prove beyond a reasonable doubt that the accused knew of the presence of the prohibited substance.' Temple v. State, 366 So.2d 740, 741
(Ala.Cr.App. 1978)."
Germany v. State, 600 So.2d 428, 429 (Ala.Cr.App.), cert. denied, 600 So.2d 432 (Ala. 1992).
 " '[T]he kinds of circumstances which may provide a connection between a defendant and [illegal drugs] are unlimited and will naturally depend on the facts of each particular case.' Temple v. State, 366 So.2d 740, 743 (Ala.Cr.App. 1978). Similarly, a defendant's knowledge of the presence of illegal drugs can be proved by circumstantial evidence, Self v. State, 564 So.2d 1023, 1027
(Ala.Cr.App. 1989), cert. quashed, 564 So.2d 1035
(Ala. 1990), which may include 'evidence of acts, or conduct of the accused, from which it may be fairly inferred that he knew of the existence of the contraband at the place where it was found,' Donahoo v. State, 505 So.2d [1067,] 1070 [(Ala.Cr.App. 1986).] (citations omitted)."
Pettway v. State, 607 So.2d 325, 328 (Ala.Cr.App. 1992). Seealso Germany, 600 So.2d at 429.
In his brief, the appellant concedes that the state proved that he knew that he was transporting controlled substances. He contends, however, that the state failed to prove that he exercised actual or potential physical control over the drugs or that he intended to do so. He further contends that because the drugs belonged to law enforcement authorities and were exclusively in the possession of law enforcement officers (he was never alone with the drugs), the state did not prove control or intent to control.
The appellant, however, was in joint possession and control with Willingham during each trip, and his intent to exercise control may be inferred from his willingness to make the deliveries, his solicitation of the drug courier work, and his actual participation *Page 120 
in the deliveries. Cf. Nobles v. State, 568 So.2d 318
(Ala.Cr.App. 1990) (wherein this court found that sufficient evidence to sustain a trafficking conviction based on constructive possession by a passenger who agreed to ride with an accomplice for the purpose of delivering marijuana). Thus, this issue is without merit.
 V
The appellant argues that, the trial court erred by denying his motion for a judgment of acquittal or, in the alternative for a new trial, because he says he established that the law enforcement officers's conduct was so outrageous, as a matter of law, as to amount to a denial of due process.
 " 'To be so "outrageous" as to effect a denial of due process, government enforcement techniques must be "fundamentally unfair" or "shocking to the universal sense of conscience," United States v. Russell, 411 U.S. 423, 432 [93 S.Ct. 1637, 1643, 36 L.Ed.2d 366] . . . (1973); United States v. Mulherin, 710 F.2d 731 (11th Cir. 1983).' United States v. Andrews, 765 F.2d 1491, at 1498 n. 4 (11th Cir. 1985). In Andrews, an undercover agent illegally transferred food-stamps through several dealings, which he recorded. The court held that '[t]he circumstances of this case surely fail to meet this stringent standard [of "outrageous" governmental conduct.]' Ibid. at 1498 n. 4. Governmental conduct wherein the informants 'may have suggested the scheme and aided in arranging in the air transportation' was found not to constitute misconduct. United States v. Gray, 626 F.2d 494, 498 (5th Cir. 1980)."
Wright v. State, 494 So.2d 936, 939 (Ala.Cr.App. 1986). The appellant has cited no authority, and we have found none, indicating a successful appeal of this "outrageous governmental conduct" argument in Alabama. Furthermore, while the United States Supreme Court has neither endorsed nor completely foreclosed such a defense, see United States v. Russell,411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973);Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646,48 L.Ed.2d 113 (1976), that Court has chosen to base its decisions on entrapment instead. See Russell.
The appellant has simply not shown that the conduct of law enforcement officers in the instant cases was "fundamentally unfair" or "shocking to the universal sense of conscience." The evidence supports a finding that the appellant repeatedly solicited drug courier work from Shane Stokes. The law enforcement authorities involved merely provided the vehicle by which he could commit the offense that he had indicated that he was predisposed to commit. Thus, this issue is without merit.
 VI
The appellant argues that the trial court erred by denying his motion for a judgment of acquittal or a new trial because, he argues, the state failed to prove a prima facie case of a violation of § 36-25-5(a), Code of Alabama 1975. Section 36-25-5(a) reads as follows: "No public official or employee shall use an official position or office to obtain direct personal financial gain for himself, or his family, or any business with which he or a member of his family is associated unless such use and gain are specifically authorized by law."Id.
The appellant contends that his role in these deliveries was to ride "shotgun," and if the vehicle in which he was riding was stopped by law enforcement authorities, he would get out of the car and show his badge to discourage further interest in the vehicle. He further contends that because the vehicle was not stopped and he did not have to use his badge, he did not use his public office for personal gain.
In the instant case, the appellant was paid to ride "shotgun" because he was a police officer, not merely to use his badge. Furthermore, he was paid for each trip, regardless of whether he was called upon to use his badge. The appellant contends that he was not paid for riding along on the trips because he was a police officer. We do not find this contention persuasive. Thus, this issue is without merit. *Page 121 
Based on the foregoing the judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.
[1] The Goldman court also allowed testimony regarding the appellant's drug possession and marijuana use to establish the lack of entrapment. See Goldman, 97 N.C. App. at 593,389 S.E.2d at 283.
[2] N.C.Gen. Stat. § 8C-1, Rule 404(b) (1986) reads as follows:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake, entrapment or accident." (Emphasis added.)