Laddel G. Edwards, the appellant, was convicted of trafficking in cocaine, in violation of Ala. Code 1975, §13A-12-231, was fined $50,000, and was sentenced to 12 years' imprisonment. He was also convicted of failing to obtain a tax stamp, in violation of § 40-17A-4, was taxed $5,780, and was sentenced to imprisonment for a term of one year and one day. He raises five issues on this direct appeal from those convictions.
 I.
Initially, the appellant argues that the transcript of the trial proceedings is "not adequate" because the court reporter who *Page 1023 
attended the trial died before he produced a transcript of the proceedings and another court reporter was assigned to transcribe the proceedings "to the best of her ability" from the notes of the original reporter.
The facts concerning this matter are as follows:
 June 9, 1992: The appellant was convicted. The court reporter was Henry Lowery.
July 21, 1992: The appellant gave notice of appeal.
 October 19, 1992: The original court reporter, Mr. Lowery, died.
 November 23, 1992: The Court of Criminal Appeals remanded this case to the trial court to determine the possibility of obtaining a transcript pursuant to Rule 10(d) and (e), A.R.App.P. The trial court was ordered to set aside the appellant's conviction and to grant a new trial if that court determined that a transcript or succinct statement of the evidence could not be obtained.
 January 19, 1993: Gwen Rester, an official court reporter, filed her Certificate of Reporter, certifying that she had transcribed the stenotype notes of the original court reporter. She certified that the "foregoing pages . . . contain a true and correct transcription to the best of my ability of the evidence. . . ." R. 135-36.
 January 22, 1993: The record on appeal was filed in the Court of Criminal Appeals.
 January 29, 1993: The appellant filed a motion objecting to the transcript.
 March 17, 1993: The trial court heard oral argument on the appellant's motion. At the conclusion of that hearing, the trial court denied the motion with the following comments:
 "Well, the problem I have with all of this about 'to the best of my ability,' I would hope that every court reporter would transcribe the evidence to the best of their ability, rather than some other way, including Mr. Lowery [the original court reporter], who is now deceased.
 ". . . But I would think that wording ought to be implied into every transcript made by every court reporter. Because if they don't do it to the best of their ability, there could be some major problems, even though they took it down right, if they don't transcribe it to the best of their ability.
". . . .
 ". . . If Mr. Lowery himself had certified it, I cannot guarantee that every word is in there. And I cannot make such a finding of fact, and no one can.
 ". . . I am making a finding that the fact that someone does something to the best of their ability is not detrimental to the record." Supp.R. 21-22, 24, 25.
 March 23, 1993: A supplemental record, consisting of the transcript of the hearing on the appellant's objection to the record, was filed in the Court of Criminal Appeals.
Gwen Rester's "certificate of reporter" states in pertinent part:
 "I, Gwen Rester, Official Court Reporter for the Twentieth Judicial Circuit of Alabama and Notary Public, State of Alabama at Large, do hereby certify that I have transcribed the stenotype notes of Henry Lowery, Deceased, of the proceedings in the above-styled cause. I reduced the stenotype notes into typewriting to the best of my ability. The foregoing pages, beginning with the word 'Proceedings' where the same appears in the center of the page, contain a true and correct transcription to the best of my ability of the evidence, including objections, oral motions, rulings of the Court and the oral charge of the Court, where applicable, as therein set out." R. 135.
In Rika v. State, 587 So.2d 1054, 1058 n. 2 (Ala.Cr.App. 1991), this Court observed:
 "We were not called on in Pope [v. State, 345 So.2d 1382 (Ala.Cr.App.), reversed, 345 So.2d 1385 (Ala. 1976)], nor are we called on in this case, to ascertain whether a certification 'to the best of my ability' is sufficient in cases where the original court reporter has died, left the jurisdiction, or is otherwise unable or unavailable to produce a transcript and a second court reporter produces the transcript from the original court reporter's notes and tapes. Compare Owen v. State, 776 S.W.2d 467, 469 (Mo.App. 1989)." *Page 1024 
We now hold that where the original court reporter has died and the original court reporter's notes and/or tape recordings are transcribed by another official court reporter, the certificate of the transcribing court reporter that the transcription is "true and correct to the best of my ability" is sufficient. In fact, under such circumstances, it is the most accurate certification that the transcribing court reporter can make. "When, through no fault of the State, transcripts of criminal trials are no longer available because of the death of the court reporter, some practical accommodation must be made." Norvell v. Illinois, 373 U.S. 420,424, 83 S.Ct. 1366, 1368-69, 10 L.Ed.2d 456 (1963).
In cases where the original court reporter has died, the trial court is the proper forum to determine whether the transcribing court reporter has provided an accurate transcript of the proceedings. See Rika, 587 So.2d at 1058. The trial court's determination " 'is conclusive absent extraordinary circumstances.' " Rika, 587 So.2d at 1058. The burden is on the defendant who challenges the certification of the trial transcript to establish that the transcript is insufficient or incomplete. Rika, 587 So.2d at 1059. Here, the appellant has failed to carry that burden.
 II.
The appellant contends that the prosecutor used his peremptory jury strikes in a racially discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
There were 6 black members on the 35-member or 40-member venire[1] (17% or 15%) from which the jury was selected. After one black veniremember was challenged for cause, the State used two of its peremptory strikes to remove blacks. Apparently, three blacks sat on the jury (25%). The appellant's Batson motion was based solely on the fact that the State struck two blacks who "never answered any questions whatsoever" on voir dire. R. 10. The trial court ruled that the appellant had failed to establish a prima facie case of racial discrimination.
Batson, Ex parte Branch, 526 So.2d 609 (Ala. 1987), and their progeny make it very clear that " '[t]he burden of persuasion is initially on the party alleging discriminatory use of peremptory challenges to establish a prima facie case of discrimination.' " Ex parte Bird, 594 So.2d 676, 679 (Ala. 1991) (quoting Ex parte Branch, 526 So.2d at 622). Until this burden is met, the challenged party "is under no obligation to offer explanations for its peremptory strikes." Jackson v.State, 594 So.2d 1289, 1292 (Ala.Cr.App. 1991). See alsoHuntley v. State, 627 So.2d 1013 (Ala. 1992). Merely showing that the challenged party struck one or more members of a particular race is not sufficient to establish a prima facie case. Harrell v. State, 571 So.2d 1270, 1271 (Ala. 1990), cert. denied, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991);Ashley v. State, 606 So.2d 187, 192 (Ala.Cr.App. 1992); Jonesv. State, 603 So.2d 419, 420-21 (Ala.Cr.App. 1992). See alsoHood v. State, 598 So.2d 1022, 1023 (Ala.Cr.App. 1991). "When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created." Harrell v. State, 571 So.2d at 1271. The trial court properly denied the appellant's Batson motion.
 III.
The appellant contends that the trial court erred in failing to quash the jury venire because the venire was not a racially balanced representation of the community.
Before challenges for cause were granted, the 40-member jury venire included six blacks. After the jury was struck, the appellant made the following objection:
 "So basically we had five blacks out of — after we struck [one black veniremember for cause] — six blacks out of 40 jurors, which is 15%. And that is not half representation of the black community of Houston *Page 1025 
County. And for that reason, we would ask that the Court impanel us another jury venire that is more representative of my client's racial group." R. 8.
The appellant totally failed to establish a prima facie violation of the fair-cross-section requirement of the Sixth Amendment under Duren v. Missouri, 439 U.S. 357, 364,99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). See White v. State,587 So.2d 1218, 1221-22 (Ala.Cr.App. 1990), affirmed, 587 So.2d 1236
(Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 979,117 L.Ed.2d 142 (1992).
 IV.
The appellant claims error in the admission into evidence of the 28.904 grams of cocaine because the State failed to: 1) establish a proper chain of custody, 2) connect the appellant to the cocaine, or 3) prove the legality of the stop of the automobile.
Although the appellant argues on appeal that the State failed to prove a proper chain of custody for the cocaine, an objection on that ground was not presented to the trial court. "The appellant in stating the grounds for his motion did not include the issue now being raised regarding the chain of custody of the [cocaine]. Because the appellant failed to object concerning the chain of custody, he waived any review of that issue. Washington v. State, 555 So.2d 347,348 (Ala.Cr.App. 1989). 'Specific grounds of objection waive all grounds not specified.' " Jackson v. State, 579 So.2d 43,44 (Ala.Cr.App. 1991).
In this case, the State presented ample evidence to connect the appellant to the cocaine. On substantially similar evidence, this Court found the evidence sufficient to support the conviction of codefendant Lloyd Clifton Gayle inGayle v. State, 616 So.2d 378 (Ala.Cr.App. 1993). At the appellant's trial, codefendant Bertram Bell claimed that the cocaine in question was his. However, he admitted on direct examination by the prosecutor that he had testified at Gayle's trial that the cocaine belonged to him and the appellant, that he had obtained the cocaine from the appellant, and that the appellant was in Dothan to sell the cocaine. "[A] prior inconsistent statement of a witness who takes the stand and is available for cross-examination may be used as substantive evidence if the prior statement was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." Hooper v. State,585 So.2d 137, 140 (Ala. 1990).
The appellant's argument that the police had no probable cause to stop his automobile is totally without factual and legal merit. Two housekeepers at the Olympia Spa Motel in Dothan noticed, over several days, that the appellant and another man were repeatedly looking in the shrubbery of the motel. The two housekeepers investigated and discovered a black round package in the shrubbery. They took the package to the owner of the motel, who telephoned the police. Those motel employees were "citizen informants" whose reliability may be presumed. Womack v. State, 555 So.2d 299, 300
(Ala.Cr.App. 1989); McDaniel v. State, 555 So.2d 1145, 1147
(Ala.Cr.App. 1989), cert. denied, 498 U.S. 810, 111 S.Ct. 43,112 L.Ed.2d 19 (1990).
Officers of the Dothan Police Department opened the package and discovered that it contained cocaine. The officers removed the cocaine and replaced it with business cards, rewrapped the package, and returned the package to the shrubbery where it had been discovered. The officers set up surveillance and, within 30 minutes, the appellant, Gayle, and Bell were observed leaving a motel room and getting into an automobile, where Gayle handed the appellant what appeared to be the black round package from the shrubbery.
In this case, the police had sufficient articulable facts to establish reasonable suspicion to believe that the occupants of the automobile were in possession of cocaine, even though there was no testimony that any of the officers saw one of the three men retrieve the package from the shrubbery. Compare Gayle, 616 So.2d at 379 (Gayle "left room 224, went to the shrubbery, picked up the package, and got into the vehicle with the other two men"). Under the facts of this case, the police were justified in stopping the automobile driven by the appellant. See Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); United States v. *Page 1026 Williams, 876 F.2d 1521, 1524 (11th Cir. 1989).
Furthermore, the stop of the automobile was not determinative of the legality of the seizure of the cocaine because the cocaine had previously been delivered to the police "on a silver platter" by the manager of the motel. The exclusionary rule does not apply to evidence seized by private individuals. Burdeau v. McDowell, 256 U.S. 465,41 S.Ct. 574, 65 L.Ed. 1048 (1921); 1 W. LaFave, Search andSeizure § 1.8(a) (2d ed. 1987).
 V.
The appellant argues that the State failed to prove his actual or constructive possession of the cocaine recovered from Room 224 of the Olympia Spa Motel. This argument is without merit because the appellant was prosecuted for possession of the 28.904 grams of cocaine recovered from the shrubbery and not for the possession of any cocaine recovered from the motel room.
There was testimony that the appellant was seen peering into the bushes where the cocaine was actually discovered. The appellant was in the automobile with the "repackaged" cocaine and had been observed in possession of the package while inside that automobile. Additionally, there was the incriminating prior testimony of codefendant Bell.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Defense counsel stated at one point in the record that there were 40 veniremembers, R. 8; the trial court stated at another point that there were 35 veniremembers, R. 10. This discrepancy was not resolved in the record.